[Crim. No. 17473. First Dist., Div. Three. Dec. 15, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
GLENN NORMAN ALDERS et al., Defendants and Appellants.

[Crim. No. 17744. First Dist., Div. Three. Dec. 15, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK LAWRENCE GARRISON, Defendant and Appellant.

314

**COUNSEL**

Tichinin & Mitchell, Bruce Tichinin and Robert B. Mitchell for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Gloria F. DeHart and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

HALVONIK, J.—Appellants challenge the legality of searches and seizures conducted at their residence. Appellants Kaufer and Alders entered pleas of guilty to charges of violating Health and Safety Code section 11366 (maintaining a place for the distribution and use of heroin). Appellant Garrison entered pleas of no contest to a charge of violating Health and Safety Code section 11351, subdivision (a) (possession of heroin for sale) and a charge of violating Penal Code section 12021, subdivision (a) (felon in possession of a concealed firearm). Prior to their plea, appellants moved to suppress the evidence upon which their convictions are predicated; this appeal is pursuant to Penal Code section 1538.5, subdivision (m).

At the time of the questioned seizures, Garrison was a probationer who had been convicted of possessing heroin. His probation was subject to the condition that he submit to search and seizure of his person, vehicle or place of residence for narcotics at any time, day or night, by any police officer without a warrant.

In December of 1976, San Jose Police Officer Fred Kingsley began receiving information from three separate sources that Garrison was using and selling heroin at his residence. Kingsley so advised Garrison's

probation officer who asked Kingsley to make a search of Garrison's residence.

On February 4, 1977, at about 10:45 a.m., Kingsley, accompanied by some other officers, all in plainclothes, went to Garrison's residence in San Jose. Kingsley knocked on the door and, peering through a sheer curtain covering the door window, saw Garrison, with whom he was familiar. He spoke to Garrison for about two minutes in an attempt to persuade him to open the door. When the attempt was unsuccessful, he took off his belt badge, held it up to the pane of glass, identified himself as a San Jose police officer, stated that he was there to conduct a probation search and demanded admittance. Garrison did not comply but, instead, turned and ran toward the back of the house. Kingsley forced the door and followed Garrison through the house to a room in which there was a bed. Garrison knelt at the side of the bed and plunged his hand between the mattress and the box spring. At this point, Kingsley caught up with him and took him into custody. A loaded .22 caliber pistol was found in the place where Garrison had been reaching.

The bed was occupied by appellant Kaufer, who was living with Garrison. Elizabeth Grasso, appellant's mother and a codefendant in this action until charges against her were dismissed, was sitting on a couch in the same room. Through an open door to another bedroom Kingsley saw appellant Alders, Garrison's step-brother, lying on a mattress.

Kingsley searched the house and in a closet between the two rooms a bag of powder was found in a pocket of a woman's jacket. Subsequent analysis revealed that the powder contained nearly one ounce of heroin.

■ Appellants complain that Kingsley entered their residence in violation of Penal Code section 844. We do not agree. The officer knocked, identified himself, demanded admittance, said he was there to conduct a probation search and did not enter until Garrison broke for the rear of the house. The case for compliance with section 844 is stronger than that in *People* v. *Garber* (1969) 275 Cal.App.2d 119, 133 [80 Cal.Rptr. 214], where the court said: "When the officers knocked at the door and Teran appeared at the window and asked who was there, the officers announced their authority when one of the officers held his sheriff's identification card to the window for Teran to read. This satisfied the minimum compliance required by section 844 . . . . With respect to the second requirement of section 844 that the officers explain 'the purpose for which admittance is desired,' due to exigent circumstances substantial

compliance with the provisions of this section was achieved and literal compliance was not required. When Teran disappeared and made no further response after the officers identified themselves, these circumstances and the facts already known by the officers . . . were such as to give rise to a reasonable belief on the part of the officers that demand for admittance would be futile and that an entry without an express announcement of purpose was necessary to prevent destruction of evidence and discourage escape."

Appellants also complain that the warrantless search of their residence violated their right to be free of unreasonable searches and seizures and that the search condition attached to Garrison's probation cannot justify an intrusion as sweeping as this one. Respondent replies with three authorities sustaining searches of residences jointly occupied by a probationer or parolee subject to a search condition and a person not subject to such a condition: *People* v. *Icenogle* (1977) 71 Cal.App.3d 576 [139 Cal.Rptr. 637], *People* v. *Thomas* (1975) 45 Cal.App.3d 749 [119 Cal.Rptr. 739] and *Russi* v. *Superior Court* (1973) 33 Cal.App.3d 160 [108 Cal.Rptr. 716]. In *Russi* the residence was shared by a woman probationer and her male companion. Contraband was found in her jewelry box. The court held that "If the entry was valid as to Miss Reed, his lack of knowledge of the existence of the limitation of privacy-that attached to the common residence, does not serve to create an abuse of police power . . . . His plight is not occasioned by coercive or other lawless police activity but by the presence of contraband in a place [i.e., the probationer's belongings] that lacked a normal expectation of privacy." (*Russi* v. *Superior Court, supra,* 33 Cal.App.3d at p. 170.) In *Thomas* a male parolee shared a residence with a woman who told inquiring police officers that he was not at home but admitted them into the apartment. Upon entering, one of the officers, hearing a noise in a bedroom, went into it and saw the parolee bending over with his hand extended toward a dresser drawer in which heroin was later discovered. In *Icenogle* narcotics were discovered in a bureau jointly controlled by the parolee and the woman with whom he lived.

■ *Thomas* establishes that the gun Garrison was reaching for was lawfully seized by Kingsley. Just as in *Thomas,* his very act of reaching demonstrated that he exercised control, joint or otherwise, over the bed.

■ The search of Kaufer's coat is an entirely different matter. She was under no order to submit to a warrantless search and there was no reason to suppose that a distinctly female coat was jointly shared by her

and Garrison. Neither reason nor authority support the proposition that police may conduct a general search of the private belongings of one who lives with a probationer.* Respondent, quoting *People* v. *Triche* (1957) 148 Cal.App.2d 198, 203 [306 P.2d 616], points out that the right to privacy of a person "living with a parolee subject to special rules of supervision, must be to some extent restricted in the public interest." To some extent, yes, but his or her right of privacy is not totally extinguished. "A joint occupant's right of privacy in his home is not completely at the mercy of another with whom he shares legal possession." (*Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 69 [27 Cal.Rptr. 889, 378 P.2d 113].) Respondent expresses concern that, if Kaufer's right to privacy is vindicated, probationers and parolees will find a "sanctuary" for their contraband in the private possessions of others. But if there is probable cause to believe that such a transfer has occurred, a search will be warranted. If not, the search is not reasonable. One of the consequences of the right to be free of unreasonable searches and seizures is that, absent probable cause, contraband is often unreachable. This may not be a positive consequence of the right but it is an inevitable one.

Appellant Garrison's conviction for violating Penal Code section 12021, subdivision (a) is affirmed, in all other respects the judgments appealed from are reversed.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied January 12, 1979.

---

*As we have already noted, in *Russi* the probationer's property was searched and in *Thomas* the parolee was reaching for the drawer that was searched. In *Icenogle*, the court said: "Defendant, however, makes the additional contention that the consent of David for the police officers to make a search of *his* residence was not sufficient to give the officers the right to search portions of the premises in the exclusive occupancy of defendant. This argument of defendant would have merit if the trial court had reached a conclusion from the evidence presented that the portion of the bedroom where the two balloons were found constituted an area under the sole dominion and control of defendant." (*People* v. *Icenogle, supra,* 71 Cal.App.3d at p. 586.) (Italics in original.)