[Crim. No. 35780. Second Dist., Div. Five. July 2, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
SOLORIO CAJERO VERONICA, Defendant and Appellant.

**COUNSEL**

Howard E. Beckler for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Gary R. Hahn, Robert D. Breton and Richard D. Marino, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KAUS, P. J.**—Defendant appeals from a judgment which followed his nolo contendere pleas to charges of possession of cocaine (Health & Saf. Code, § 11350) and possession of a pistol by an ex-felon (Pen. Code, § 12021), accompanied by his admission of a prior felony conviction for the sale of heroin for which he had served a term in prison. Additional charges were dismissed.

Defendant's transgressions were discovered by law enforcement agents as a result of a warrantless search of defendant's family residence, made pursuant to a consent for such search executed by defendant as a condition of his parole. When the search was conducted defendant was not at home. The officers were admitted by his wife who spoke no English. One of the officers informed her that they wanted "buscar su casa. . . . Como una condicion de parole de Solario [*sic*]." The record indicates that Mrs. Veronica submitted to the officers' announcement without protest.

The evidence seized as a result of the search consisted of (1) several toy balloons containing a substance resembling heroin residue; (2) a number of tinfoil bindles containing what appeared to be heroin; (3) one paper bindle containing what appeared to be cocaine; (4) a hand gun; and (5) about $1,500 in small bills. The first four items were found in areas of the home shared by defendant and others. Item 5 was found "in a purse hanging on the rear of the bedroom door, . . . It was a brown leather purse with designs on it. It appeared to be a purse that a female would wear."

█ Defendant made a motion to suppress all of the fruits of the search. In argument, however, counsel stressed that the purse was a special case because on the evidence adduced it was clearly the property of Mrs. Veronica.[1]

---

[1]Quotes from counsel's argument: "Mr. Hager testified today that he found a quantity of money in what he stated in his words what appeared to be a female purse. I submit that that is right on the point of, I think it was *People* versus *Cruz*—if I can just have a minute to find that. [¶] Yes, *People* versus *Cruz* at 61 Cal.2nd, 861. That was another case where there was a search condition incident to a grant of parole where the policemen simply did a blanket search of the entire premises, residential premises, without making any inquiries as to whether or not this particular piece of property was something that belonged to the defendant and therefore was within the scope of the—of the search condition attached to parole.

Counsel's argument was clearly correct. Paraphrasing the language in *People* v. *Alders* (1978) 87 Cal.App.3d 313, 317-318 [151 Cal.Rptr. 77]: "The search of [Mrs. Veronica's purse] is an entirely different matter. She was under no order to submit to a warrantless search and there was no reason to suppose that a distinctly female [purse] was jointly shared by her and [Veronica]. Neither reason nor authority support the proposition that police may conduct a general search of the private belongings of one who lives with a [parolee]."

In theory, of course, Mrs. Veronica could have expressly or impliedly consented to a search of her purse, regardless of the fact that such a search was not authorized by her husband's parole condition. A careful review of the record, however, convinces us that by no stretch of the imagination can anything she did, said, or failed to do or say be interpreted as such a consent.

The People claim that *Alders* is wrong in that it enables a parolee to establish a sanctuary for contraband in his wife's personal effects. This, of course, approaches the problem from the wrong end: it is the Fourth Amendment that makes a constitutional sanctuary of all "persons, houses, papers, and effects..." which sanctuary can ideally only be violated by a search pursuant to a warrant. While a consent search of a parolee's home is an exception to this basic rule, it is not, however, an end in itself which justifies further invasions of constitutionally protected zones of privacy.

We do not, of course, suggest that simply because a garment or container is clearly designed for a person other than the parolee, it may never be searched under the parolee's prerelease consent. The particular circumstances may indicate that the object is, in fact, one of the parolee's own effects or, at least, jointly possessed by him and another. In this case, however, there was simply nothing to overcome the obvious presumption that the purse was hers, not his.

---

"The cases say that just because one person lives in a house with joint occupants, that does not mean that all the other joint occupants give up their right, their Fourth Amendment rights because of the other joint occupant has a condition of—a search condition attached to parole. . . .

"So, I would urge the Court to suppress whatever was found in that purse in the way of money. I think it's clear that that officer testified it was a female purse; he didn't think it belonged to the defendant. There was no reasonable basis to believe that it belonged to Mr. Veronica."

■   Defendant also claims that the entire search was invalid because he was not present when it was made and his wife did not expressly consent to the search. We find the situation in *People* v. *Byrd* (1974) 38 Cal.App.3d 941, 944-948 [113 Cal.Rptr. 777] to be legally indistinguishable from the facts in this case and contrary to defendant's assertion.

The unfortunate aspect of this case is that under the principle of *People* v. *Hill* (1974) 12 Cal.3d 731, 767-769 [117 Cal.Rptr. 393, 528 P.2d 1], as exemplified in *People* v. *Rios* (1976) 16 Cal.3d 351, 357-359 [128 Cal.Rptr. 5, 546 P.2d 293], we must reverse although it is abundantly clear that the People would have had an excellent case without the contents of the purse.

The judgment is reversed and the cause remanded to the trial court. That court is directed, on motion of defendant within 30 days of the finality of this opinion, to vacate the nolo contendere pleas and to reinstate those charges contained in the information as moved for by the People, and to proceed to trial or other appropriate disposition in accordance with the views expressed in this opinion. Should defendant not so move, or should he duly waive his right to so move, the trial court is directed to reinstate the judgment.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied July 22, 1980.