[Crim. No. 4244. Fifth Dist. Jan. 9, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIA FLORENTINA MONTOYA, Defendant and Appellant.

**COUNSEL**

Willard L. Weddel, Public Defender, and Michael J. Webb, Deputy Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Shirley A. Nelson and Joel Carey, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### LAURITZEN, J.*—

#### STATEMENT OF THE CASE

By complaint, appellant was charged with possession of heroin in violation of Health and Safety Code section 11350. Contemporaneous with the preliminary examination, a Penal Code section 1538.5 suppression motion was heard by a magistrate. The motion was denied at the conclusion of the preliminary examination. Appellant thereupon entered a plea of guilty to the charged offense, as permitted by Penal Code section 859a, on condition that she serve no more than one year in the county jail as a condition of probation or on condition that she be sent to the California Rehabilitation Center. The matter was then certified to the superior court for sentencing.

On February 15, 1979, appellant filed a motion to have the superior court consider her suppression contention. On February 26, 1979, following presentation of arguments by both sides and based upon the transcript of the preliminary hearing, the suppression motion was denied by the superior court. On February 27, 1979, the court suspended imposition of sentence and placed appellant on probation for a period of three years on condition that she serve one year in a county jail facility. On the same date, appellant filed notice of appeal.

The following pertinent facts are taken from the transcript of the preliminary hearing. At about 9 a.m. on September 8, 1978, state Parole Agents Willis, Heberle, Sigrest and Hughes went to the Kern County residence of Elaina Fierro, a parolee subject to a standard search condition. The pertinent parole condition for Fierro specified that, "You are to submit to a search of your person, your residence and any property under your control by your agent, any agent of the Department of Corrections or law enforcement officer." The parole agent's purpose in visiting Fierro was to arrest her for a parole violation and to conduct a

---

*Assigned by the Chairperson of the Judicial Council.

warrantless search of her residence. Agents Sigrest and Heberle proceeded to the rear of the structure, while Agents Willis and Hughes went to the front door and knocked. Appellant Montoya (aka Lillia Munoz) answered by opening the door; Agent Willis advised her that they were attempting to make contact with Fierro. Appellant replied that Fierro was not home. The agents then identified themselves and informed appellant of their intention to search. The officers also stated that they were going to enter the residence and observe whether Fierro was present. Appellant complied by stepping away from the door, and the agents entered the residence. The agents found three women in the house: Fierro, appellant, and Rachael Montiel. The entering agents then proceeded to let the two men waiting by the rear door into the residence.

Willis testified that all three women were dressed in their night clothes (i.e., robes). The agents then told the three women to sit down and stay put until completion of the search.

Willis stated that the Fierro residence consisted basically of one bedroom with a double bed, a kitchen and a living room with a couch, two chairs and a small table. It appeared that someone had been sleeping on the couch in the living room, since there was a blanket on it and clothing was scattered on the floor and chairs in the living room area. After entry from the rear door, Agent Heberle searched the kitchen and found some contraband and syringes. He then proceeded to the living room area where appellant and Montiel were located. Although Heberle had visited the Fierro residence about 10 to 12 times, he had never seen either appellant or Montiel during any of the previous visits. Heberle was familiar with Montiel, knowing her to be a parolee subject to the same warrantless search condition as Fierro. He then decided to conduct a search of Montiel, even though he was not her parole agent and the agents had no reason to believe that she would be in the Fierro residence.

Accordingly, in the presence of appellant and Montiel, he proceeded to search some of the clothing on the living room floor and chairs. Specifically, he picked up a pair of cutoff Levi jeans from one of the chairs near the couch. Inside the pockets, Heberle found a hypodermic syringe, a gum wrapper containing what appeared to be pills, and a match book containing a bindle with .29 grams of brown powder consisting of heroin. As soon as Heberle had removed these items from the cutoffs,

appellant spontaneously remarked to him, "Those are my pants and those are my things."

On the day in question, it appeared that someone had been sleeping in both the living room area and the bedroom.

At the time he picked up the cutoff jeans, Heberle subjectively believed that the pants did not belong to Fierro; instead, he believed that they belonged to either Montiel or appellant. In explaining his subjective belief, Heberle stated, "The clothing in the room appeared to be that of somebody who was a guest in the house. My experience with Elaina Fierro was that her clothing was always kept neatly in her bedroom. There were guests in the home and my opinion was that the clothing belonged to somebody other than Elaina Fierro or her daughter." Upon cross-examination by defense counsel, Heberle testified as follows:

"Q. Now, you didn't have any reason to believe this residence was Miss Montiel's, did you?

"A. No.

"Q. You believed this residence was the sole residence, at least as far as you knew, of Miss Fierro. Right?

"A. That is correct.

"Q. You didn't know what clothing in that residence belonged to Miss Montiel, did you?

"A. Not specifically, no.

"Q. You just assumed that some clothing belonged to her. Is that correct?

"A. That is correct.

"Q. Did you have any reason to believe that this particular item that you searched there belonged to Miss Montiel any more than it might have belonged to Miss Montoya?

"A. No.

"Q. Miss Montiel wasn't wearing this item at the time you searched it, was she?

"A. She was not." Heberle noted that he was aware of the search condition in Montiel's parole agreement, and that he searched the pants because he felt "she was in a position to have control of that property,..."

In explaining his reason for denying the suppression motion, the magistrate stated, "He [Agent Heberle] was searching on a residence theory. He was there on a residence theory on one, and his testimony was that he thought the pants probably belonged to either Montiel or the defendant.... I certainly think absent Montiel the motion would have been granted."

The superior court substantially agreed with this reasoning as a basis for denying the renewed suppression motion. It sustained the seizure of the cutoff jeans on the theory that the officers had reasonable cause to believe that the clothing might belong to Montiel, thereby subjecting it to a warrantless parole search.

Appellant claims that since there was no positive indication that the pants belonged to parolee Montiel, i.e., that since both objectively and subjectively there was only a 50 percent chance that the pants belonged to the parolee, the search was illegal. Indeed, appellant suggests that Heberle had an affirmative duty to determine the ownership before deciding whether to search. (Cf. *People* v. *Cruz* (1964) 61 Cal.2d 861, 867 [40 Cal.Rptr. 841, 395 P.2d 889].)

Respondent, on the other hand, contends that the law imposes no such affirmative duty on an agent conducting an otherwise valid parole search. Rather, respondent submits that under the facts of the instant case, search of the pants was permissible because there was no positive indication or basis for reasonably believing that the pants probably did *not* belong to the parolee; i.e., a consent search remains reasonable if there is at least a 50 percent chance that the item belongs to a person subject to a search condition.

Not only must the objective facts concerning the reasonableness of a search be considered, but also the subjective beliefs of the searching agent. Agent Heberle believed the pants belonged to a guest, and he

felt he had no more reason to believe they belonged to Montiel rather than appellant. The evidence therefore fails to show Agent Heberle subjectively believed the pants "probably" belonged to parolee Montiel. (See *Mestas* v. *Superior Court* (1972) 7 Cal.3d 537, 542 [102 Cal.Rptr. 729].) "Probable cause" implies more evidence than "equal" evidence. (See *People* v. *Moreno* (1977) 67 Cal.App.3d 962, 966 [134 Cal.Rptr. 322], disapproved on other grounds in *People* v. *Bower* (1979) 24 Cal.3d 638, 649, fn. 10 [156 Cal.Rptr. 856, 597 P.2d 115].)

■ Probable cause for the warrantless arrest of a person suspected of criminal activity exists when the facts apparent to the officer would lead a person of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. (*People* v. *Moreno, supra*, 67 Cal.App.3d at p. 966 (citing *People* v. *Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632], cert. den. (1976) 425 U.S. 934 [48 L.Ed.2d 175, 96 S.Ct. 1664], and other cases).) Probable cause for a warrantless arrest "has also been defined as having more evidence for than against. . . ." (*People* v. *Ingle* (1960) 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577], cert. den. (1960) 364 U.S. 841 [5 L.Ed.2d 65, 81 S.Ct. 79].) The same probable cause standard is applicable to warrantless searches. (*People* v. *Triggs* (1973) 8 Cal.3d 884, 894-895 [106 Cal.Rptr. 408, 506 P.2d 232], disapproved on another point in *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896, fn. 4 [150 Cal.Rptr. 910, 587 P.2d 706]; see also *Spinelli* v. *United States* (1969) 393 U.S. 410, 417, fn. 5 [21 L.Ed.2d 637, 644, 89 S.Ct. 584].) *People* v. *Veronica* (1980) 107 Cal.App.3d 906, 909 [166 Cal.Rptr. 109], demonstrates that the reasonable expectation of privacy possessed by a *non*parolee cannot be invaded through an overbroad parole search.

■ The cases cited in the previous two paragraphs are dispositive of the pivotal issue presented in this appeal. We hold that there was a lack of probable cause for the search in question. Clearly, when there was but a 50-50 chance that the jeans and contraband belonged to appellant, Agent Heberle was under a duty to inquire as to who owned the jeans before searching them. At that time, agent Heberle faced a situation similar to the one disclosed in *People* v. *Cruz, supra*, 61 Cal.2d 861. In *Cruz*, officers were given consent by one cotenant and one transient occupant of a residence to "look around." They were told that some of the boxes, suitcases and other containers in the house were the property of third persons. Without ascertaining the ownership of each

container, Agent Van Raam proceeded to open and search all of the boxes and suitcases in turn and, in particular, a blue suitcase belonging to the defendant. Contraband was found therein. The Supreme Court ruled the search illegal and reversed the conviction of the defendant, noting that there was neither probable cause nor a valid prior consent to search defendant's blue suitcase. The Supreme Court said, "'Therefore, as to any particular suitcase before he opened it, he should have said, "Is this yours? Can I look into it?" or "Does this belong to the man [i.e., defendant], or somebody else?"'" (*Id.*, at p. 867.) As in *Cruz*, Agent Heberle could have avoided an unwarranted intrusion into an article of clothing belonging to appellant (a transient guest) by asking her if the cutoffs belonged to her, or by asking Montiel if they belonged to her. Such a simple questioning procedure would have protected appellant's expectation of privacy as it related to her jeans. The trial court erred in denying the suppression motion.

"One of the consequences of the right to be free of unreasonable searches and seizures is that, absent probable cause, contraband is often unreachable. This may not be a positive consequence of the right but it is an inevitable one." (*People* v. *Alders* (1978) 87 Cal.App.3d 313, 318 [151 Cal.Rptr. 77].)

For the foregoing reasons, the judgment is reversed and the cause remanded to the trial court. That court is directed to vacate the order denying the motion to suppress and, within 30 days of the finality of our decision herein, to vacate the guilty plea or remand the case to the municipal court with directions to vacate its order denying defendant's suppression motion and the Penal Code section 859a guilty plea of defendant in that court.

Franson, Acting P. J., and Hanson (P. D.), J., concurred.