[Crim. No. 21562. First Dist., Div. Three. July 23, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILLIP RONALD PALMQUIST, Defendant and Appellant.

**COUNSEL**

Harry V. Lehmann and Steven C. Duditch for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, John T. Murphy and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—This appeal, pursuant to Penal Code section 1538.5, subdivision (m), is from a judgment entered after defendant and appellant Phillip Palmquist's motion to suppress evidence was denied and he pled guilty to a violation of Health and Safety Code section 11359.

*Facts*

On December 13, 1979, Officer Robert Jones of the Napa Special Investigations Bureau was contacted by a citizen informant who advised that appellant and his roommate, Bridget Barjkovich, were involved in sales of hashish. The informant further related that appellant and Barjkovich resided at and sold narcotics from 2021 First Street, apartment No. 3. Officer Jones was aware from a case in which he was previously involved that appellant and Barjkovich had resided together two years prior.

Officer Jones contacted appellant's probation officer, Jan Barr, who advised that appellant was on probation, but had failed to report since

September 1979. Ms. Barr further advised that appellant was subject to a search probation condition and she requested Officer Jones to investigate further. Ms. Barr provided Officer Jones with a copy of the probation report and the order, which provided, in part, that appellant was not to possess or deal in drugs. The probation order also provided that appellant was subject to a search of his person and residence by his probation officer or by any law enforcement officer with or without a search warrant, warrant of arrest or reasonable cause. Officer Jones checked with Barjkovich's employer and verified her address as being the one given by the informant. Officer Jones also verified with the landlord that the apartment was leased in Barjkovich's name. Officer Jones then attempted to confirm appellant's presence at the residence by calling the residence and asking for "Phil." The female who answered stated that he was not home. Officer Lynn Harmston of the Napa Special Investigations Bureau also phoned the residence on December 17, 1979, and spoke with a person who identified himself as "Phil."

Later that day Officer Jones and other officers went to the residence at 2021 First Street, apartment No. 3, and observed appellant within the residence looking out of the living room window. Officer Jones recognized appellant from mug shots. Officer Jones then went to the apartment door, knocked repeatedly and announced he wished to speak with appellant about his probation conditions. There was no response. Appellant attempted to leave the house through the back door, but a police officer was stationed at the back of the house. Finally, Officer Jones forced the front door open, entered the residence and located appellant standing between the kitchen and living room. Appellant was immediately arrested "[f]or violation of his probation, for refusal to answer the door as ordered, and since [*sic*] he had not reported to his probation officer since September of '79." The officers then conducted a search of the apartment. In plain view on a table in the living room was a black and beige gram scale. In the refrigerator and in a ski parka in the kitchen were a number of plastic bags containing 52.45 grams of marijuana (i.e., between 2 and 3 ounces).

After appellant was advised of his *Miranda* rights, Bridget Barjkovich returned to the apartment. Appellant volunteered that all of the marijuana was his, and that the ski parka was his as well.

Appellant moved to suppress the evidence discovered during the search, stipulating that the preliminary hearing transcript would be

considered in determining the motion. The motion was denied. Thereafter appellant renewed his motion to suppress. Said motion was also denied.[1]

Appellant attacks the search and seizure pursuant to his probation condition on the grounds that: (1) it was conducted by police officers rather than by the probation department as a subterfuge for a general police investigation; (2) there was no reasonable suspicion that he was involved in criminal activity; (3) there was no reasonable belief he lived at the residence searched; (4) it was conducted pursuant to an incorrect and defective probation order; and (5) it was conducted subsequent to a warrantless arrest in the home, which arrest violated *People v. Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], cert. den. 429 U.S. 929 [50 L.Ed.2d 299, 97 S.Ct. 335]. For reasons we are about to discuss, we affirm the judgment.

As to appellant Palmquist's first contention, our Supreme Court in *People v. Mason* (1971) 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630], certiorari denied 405 U.S. 1016 [31 L.Ed.2d 478, 92 S.Ct. 1289], disapproved on other grounds in *People v. Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545], upheld a warrantless search made by a police officer who had previously determined that the defendant was on probation and subject to search by any law enforcement officer as a condition of his probation. (Accord, *People v. Kasinger* (1976) 57 Cal.App.3d 975 [129 Cal.Rptr. 483]; *People v. Turner* (1976) 54 Cal. App.3d 500 [126 Cal.Rptr. 652].) Adhering to the teaching of *Mason* this court in *People v. Knox* (1979) 95 Cal.App.3d 420 [157 Cal.Rptr. 238], also upheld the warrantless search of a parolee by law enforcement officers as had the court in *People v. Icenogle* (1977) 71 Cal. App.3d 576 [139 Cal.Rptr. 637]. Further, in *Knox*, we distinguished *People v. Coffman* (1969) 2 Cal.App.3d 681 [82 Cal.Rptr. 782], upon which appellant here places considerable reliance, as involving a case where no explicit consent to warrantless searches by law enforcement officers had been given. (See *People v. Natale* (1978) 77 Cal.App.3d 568 [143 Cal.Rptr. 629].) Since appellant Palmquist gave express consent to warrantless searches by any law enforcement officer as a condition of his probation, the search need not have been instigated by appellant's probation officer nor must she have accompanied the officers on

---

[1]Appellant thereafter pled guilty and was sentenced to the lower base term of 16 months. Execution of sentence was suspended and appellant was placed on probation on the condition that he serve six months in county jail.

the search.[2] Likewise in view of the express waiver and the probation officer's request that the police officers further investigate the informant's tip, the search here was not a subterfuge for a search *otherwise impermissible* as in *Coffman.* (Cf. *In re Martinez* (1970) 1 Cal.3d 641, 647, fn. 6 [83 Cal.Rptr. 382, 463 P.2d 734], cert. den. 400 U.S. 851 [27 L.Ed.2d 88, 91 S.Ct. 71]; *People v. Natale, supra; People v. Hernandez* (1964) 229 Cal.App.2d 143, 150 [40 Cal.Rptr. 100], cert. den. 381 U.S. 953 [14 L.Ed.2d 725, 85 S.Ct. 1810]; with *People v. Knox, supra; People v. Icenogle, supra; People v. Kasinger, supra.*) In light of *Mason* and its progeny, we are not persuaded that *United States* v. *Consuelo-Gonzalez* (9th Cir. 1975) 521 F.2d 259, and *United States* v. *Smith* (W.D.N.Y. 1975) 395 F.Supp. 1155, also relied upon by appellant, compel a contrary conclusion.[3]

■ We turn now to the question of whether the officers had sufficient cause to lawfully conduct the search. *Mason* held valid the advance waiver of Fourth Amendment rights in order to obtain probation. (*People v. Mason, supra,* 5 Cal.3d 759, 766; see *People v. Calais* (1974) 37 Cal.App.3d 898, 903-904 [112 Cal.Rptr. 685].) Such a waiver is considered voluntary since the defendant is not compelled to consent to the condition. (*Ibid.; contra, People v. Bremmer* (1973) 30 Cal.App.3d 1058, 1063-1064 [106 Cal.Rptr. 797]; *People v. Keller* (1978) 76 Cal. App.3d 827, 832-833, fn. 2 [143 Cal.Rptr. 184].) Some courts, however, have concluded that there must still be conduct "reasonably suggestive of criminal activity to 'trigger' the search." (*People v. Guerrero* (1978) 85 Cal.App.3d 572, 581 [149 Cal.Rptr. 555]; see *People v. Garcia* (1975) 44 Cal.App.3d 1029 [119 Cal.Rptr. 128]; *People v. Bremmer, supra; contra, People v. Turner, supra,* 54 Cal.App.3d 500, per Elkington, J.) In those cases the probationer had consented only generally to probation searches or to warrantless probation searches, but had made no express waiver of all reasonableness under the Fourth Amendment.

---

[2]Appellant ultimately concedes the point in his opening brief at page 9.

[3]*Consuelo-Gonzalez* involves interpretation of the Federal Probation Act. In that case the court held that probation searches must be conducted by probation officers or in their presence. The court expressly declined to state an opinion on the constitutionality of *Mason.* (*Id.,* at p. 266.)

*United States* v. *Smith* does not stand for the point for which it is cited. In that case a state parolee's consent to search was held involuntary under Fourth Amendment standards. The court also held that a parolee may be subject to a search by his parole officer if the circumstances reasonably suggested an actual or imminent parole violation; no reasonable suspicion was articulated in *United States* v. *Smith.* The issue of whether a police officer could have conducted a parole search, however, was not presented.

Where, as in the case at bench, a probationer expressly consents to probation searches without a search warrant and *without any reasonable cause* it would appear, therefore, that he has waived whatever claim of privacy he might otherwise have had. (See *People v. Mason, supra,* 5 Cal.3d 759; cf. *People v. Kasinger, supra,* 57 Cal.App.3d 975; *People v. Constancio* (1974) 42 Cal.App.3d 533 [116 Cal.Rptr. 910] (probation condition required reasonable cause to initiate probation search; reasonable cause found).) Accordingly, appellant here waived whatever Fourth Amendment rights he might have had to require reasonable cause to conduct the search by consenting to searches without any cause as a condition of probation.

Nevertheless, we address appellant's argument in order to establish that reasonable cause[4] existed even though none was required. Appellant argues that the single tip from an unidentified informant was insufficient as a matter of law to establish reasonable cause to trigger the search of his residence. To establish his contention he contrasts the facts in the present case with the facts in *People v. Mason, supra,* 5 Cal.3d 759, and *People v. Icenogle, supra,* 71 Cal.App.3d 576. In *Mason,* the defendant's vehicle, identified by its license plate, was seen leaving the scene of a burglary. The police traced the car to the defendant, learned that he was on probation with a search condition and proceeded to conduct a search of his residence. In *Icenogle,* police officers obtained information from a confidential informant that defendant's live-in boyfriend, a parolee subject to a search condition, was dealing in heroin. Other police officers received similar information and thereafter the officers began a surveillance of the premises. They observed defendant and her boyfriend for over four hours and saw them drive to various locations, park, get out and have conversations with drivers and occupants of other vehicles. The officers then searched defendant's house. The searches in both *Mason* and *Icenogle* were found valid.

It is true as appellant Palmquist contends that the officers were not percipient witnesses to the illicit activity described by the unnamed informant[5] nor did they receive corroboration of the informant's tip

---

[4]"But the 'reasonable cause' called for by the probation condition is not to be equated with probable cause for issuance of a warrant. We construe 'reasonable cause,' in the context of the probation order, as meaning circumstances indicating that in the interests of effective probation supervision a search is advisable." (See *People v. Kasinger, supra,* 57 Cal.App.3d 975, 978.)

[5]When defense counsel requested the name of the informant the district attorney objected on grounds of relevance. He argued that the defense was entitled to the name of

from any other person. Indeed, we observe that Officer Jones gave very few details regarding the informant or the tip. Nevertheless we note that courts have found reasonable suspicion to arise on the basis of a single informant's tip without any further corroboration. (See e.g., *People* v. *Thomas* (1975) 45 Cal.App.3d 749 [119 Cal.Rptr. 739] (single confidential, reliable informant); *People* v. *Constancio, supra*, 42 Cal. App.3d 533 (single, confidential, reliable informant); *People* v. *Hernandez, supra*, 229 Cal.App.2d 143 (single unidentified informant); *People* v. *Turner, supra*, 54 Cal.App.3d 500 (search upheld on basis of unidentified informant's tip—no reasonable cause *required*).) Here, however, Officer Jones did state the informant was a "citizen" which lends some measure of credibility to the individual. (*People* v. *Ramey, supra*, 16 Cal.3d 263, 268-269.) In addition, the officers corroborated *some* of the information given by the informant simply by verifying that Ms. Barjkovich did, in fact, live at the First Street address and by observing appellant at the residence just prior to the search. The officers were also aware that appellant had failed to report to his probation officer since September 1979. This fact alone might not support a reasonable suspicion that appellant had lapsed into misconduct, but it certainly added to the suspicion Officer Jones entertained at that time.

Further, when the officers arrived at appellant's residence he refused to answer the door and attempted to flee out the rear after being told that the officers were there to discuss his probation conditions with him. Appellant Palmquist "had already, as a condition of probation, waived any right to refuse a law enforcement officer entry to [his] premises to conduct a search" (*People* v. *Constancio, supra*, at p. 546), and the officers were not required to recite the basis for their suspicion that a search was warranted in order to gain entry. Consequently, the fact of appellant's attempted flight could lead one to suspect criminal activity to which appellant had been a party might have taken place in the residence. (*People* v. *Garcia, supra*, 44 Cal.App.3d 1029, 1032; cf. *People* v. *Perry* (1979) 100 Cal.App.3d 251, 262-263 [161 Cal.Rptr. 108].)

We conclude that substantial evidence existed to support the trial court's finding that at the time the officers here entered Palmquist's residence they reasonably suspected that criminal activity was afoot. (*People* v. *Anthony* (1970) 7 Cal.App.3d 751, 760 [86 Cal.Rptr. 767].)

---

the informant only if it could prove that the informant's testimony could exonerate Palmquist. The court sustained the objection on grounds of relevance and privilege.

█ Appellant also contends that the search was conducted beyond the scope of the probation order since the probation order states that only *his* residence was subject to search and the police officers had no reason to believe appellant lived at the residence searched. Citing *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933], and *Wong Sun* v. *United States* (1963) 371 U.S. 741 [9 L.Ed.2d 441, 83 S.Ct. 407], appellant urges that the evidence seized in the course of the illegal search must therefore be suppressed. The argument is without merit. The substantial evidence shows that the officers reasonably believed that apartment No. 3 was appellant's residence.

The evidence adduced at the preliminary hearing indicates that the informant told Officer Jones that appellant lived at the 2021 First Street address with Bridget Barjkovich, and that Officer Jones knew from a case in which he had previously been involved that appellant had lived with Ms. Barjkovich two years prior. It was also shown that the officers had made two telephone calls to the residence and at least found that a "Phil" answered the phone and that a "Phil" possibly resided there. Then, just prior to their entry, an officer in the search party observed a person he believed to be appellant looking out the window.

█ It is settled that where probation officers or law enforcement officials are justified in conducting a warrantless search of a probationer's residence, they may search a residence reasonably believed to be the probationer's. (*People* v. *Kanos* (1971) 14 Cal.App.3d 642 [92 Cal. Rptr. 614]; cf. *People* v. *Ott* (1978) 84 Cal.App.3d 118, 126 [148 Cal. Rptr. 479].) Appellant cites *People* v. *Icenogle, supra*, 71 Cal.App.3d 585, and *People* v. *Mason, supra*, 5 Cal.3d 759, as cases where the officers had ample reason to believe that the defendant lived in the residence searched, contrasting them with the situation here which he claims lacks the same detailed information establishing his residence at the time of the search.[6] We agree that in both *Icenogle* and *Mason* the officers had definitive information as to the residence of the defendant. However, the question of whether police officers reasonably believe an

---

[6]In *Icenogle*, a confidential informant informed the police that the parolee was dealing in drugs from a particular address and provided the parolee's telephone number. Other officers obtained similar information and a surveillance of the premises was undertaken during which the parolee was observed. When the officers finally approached the parolee he told them that he lived at the address given by the informant.

In *Mason*, the officers traced the probationer's vehicle to the address listed as his residence. The vehicle from which the license number had been obtained was parked at that address when the officers arrived.

address to be a probationer's residence is one of fact, and we are bound by the finding of the trial court, be it express or implied, if substantial evidence supports it. (*People* v. *Superior Court* (*Keithley*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].) ■ Although the evidence possessed by the officers concerning appellant Palmquist's residence was not beyond cavil, the officers could reasonably believe that he lived at the First Street apartment and proceed to conduct the search. The trial court's finding in this regard must therefore be upheld.

■ In his reply brief appellant raises for the first time[7] the argument that the judgment should be reversed because "there was at best a 50 percent chance the jacket and refrigerator belonged to Appellant," citing *People* v. *Montoya* (1981) 114 Cal.App.3d 556 [170 Cal.Rptr. 624], decided subsequent to the filing of appellant's opening brief. The gravamen of appellant's contention is that since there was no positive indication that the refrigerator and ski parka, in which the contraband was found, belonged to him, the officers needed a search warrant or consent to search them. In *Montoya*, the court held that the state parole agent was under a duty to inquire as to who owned the pair of cutoff jeans prior to searching them since he believed that it was equally as likely that they belonged to defendant, a nonparolee, as it was that they belonged to a second guest known to the agent also to be a parolee with a search condition. As there existed only a 50 percent chance that the jeans were lawfully subject to the search condition, the search was undertaken without probable cause and in violation of defendant's reasonable expectation of privacy. The court rejected the People's argument that the search was permissible because there was no positive indication or basis for reasonably believing that the pants probably did *not* belong to the parolee (i.e., a consent search remains reasonable if there is at least a 50 percent chance that the item belongs to a person subject to a search condition.) For two reasons we find *Montoya's* reasoning less than persuasive. First, the court apparently ignores statements in

[7]Once appellant below produced evidence to show that the seizure was without a warrant, the People bore the burden of proving the justification for the warrantless seizure. (*People* v. *Cruz* (1964) 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269 [294 P.2d 23]; *Wilder* v. *Superior Court* (1979) 92 Cal.App.3d 90, 96 [154 Cal.Rptr. 494].) A defendant is not required to assert specific attacks upon the warrantless seizure of the evidence he seeks to suppress. (*Ibid.*) Where the defendant does assert specific contentions and the People demonstrate that such contentions are meritless, the evidence will nevertheless be suppressed if the People have failed to carry its burden of justification for the seizure. (*Id.*, at p. 97.) The argument presented here for the first time is therefore timely and the fact that *Montoya* was decided after appellant's submission of his opening brief is sufficient reason to consider the argument even though raised in appellant's reply brief.

the record by the parole agent which would support a finding that he subjectively and objectively believed the parolee and nonparolee exercised joint control over the jeans, at least at the time they were discovered. Second, the court erroneously applied the standard of probable cause (applicable to warrantless searches) to reach its holding that searching parole officers must have *probable cause* to believe the item to be searched belongs to the parolee. (See fn. 4, *ante*; "reasonable cause" in our view is the proper standard for probationer or parolee alike.) For these reasons *Montoya*, in our view, is not controlling.

The question remains whether there was reason to believe the refrigerator and ski parka were either jointly shared by appellant and Ms. Barjkovitch (*People* v. *Alders* (1978) 87 Cal.App.3d 313, 317 [151 Cal.Rptr. 77]; *People* v. *Icenogle, supra*, 71 Cal.App.3d 576, 586-587), or were appellant's own effects (*People* v. *Veronica* (1980) 107 Cal. App.3d 906, 909 [166 Cal.Rptr. 109]) to warrant their search. In *Icenogle* the contraband was found in a bureau jointly controlled by the parolee and the woman with whom he lived. Joint control was established from the fact that all portions of the one bedroom apartment were found to be jointly occupied. In the case at bench, the facts indicating that appellant resided in the First Street apartment would be sufficient to support a finding that the refrigerator was jointly possessed.

The ski parka, being an item of clothing, requires a slightly different analysis. In both *Alders* and *Veronica*, it was presumed that distinctly female articles of clothing did not belong to the male probationer/parolee and were therefore not subject to a search. In *Alders*, the court said that where there "was no reason to suppose" (p. 317) that a female coat was jointly shared, a search thereof is not warranted. In *Veronica*, the court opined that "The particular circumstances may indicate that the object is, in fact, one of the parolee's own effects or, at least jointly possessed by him and another. In this case, however, there was simply nothing to overcome the obvious presumption that the purse was hers, not his." (*Veronica, supra*, at p. 909.) According to the police report, the green ski parka was found lying on the floor in the southwest corner in the kitchen near where appellant Palmquist was arrested. Presumably the parka was not "distinctly female." After the parka was searched appellant volunteered that the parka belonged to him. Although the evidence is thin, it is sufficient to support a finding that the jacket was either jointly possessed by appellant and Ms. Barjkovitch or that it was appellant's own jacket. ■ "In reviewing a Fourth

Amendment claim turning upon factual considerations, we may not reweigh the evidence and must indulge in any inference reasonably drawn by the trial court. [Citation.] If the trial court's 'determination of [an] implicit factual question finds substantial support in the record ... we are therefore bound by it.' [Citation.]" (*People* v. *Menifee* (1979) 100 Cal.App.3d 235, 239 [160 Cal.Rptr. 682].) It is of no consequence on appeal that the "'circumstances might also be reasonably reconciled with a contrary finding.'" (*People* v. *Bynum* (1971) 4 Cal.3d 589, 599 [94 Cal.Rptr. 241, 483 P.2d 1193].)

■ Appellant next contends that the officers could not rely on the probation order in their possession to conduct the search because it did not contain the correct dates of his actual probation term, and it was not signed by any judge.[8] He analogizes to *Bowyer* v. *Superior Court* (1974) 37 Cal.App.3d 151 [111 Cal.Rptr. 628, 112 Cal.Rptr. 266], which proscribed the use of telephonic search warrants and argues that the search here was invalid. The argument is frivolous. We are aware of no rule which requires that the searching officers must have a certified copy of a probation order, and in practice it is not uncommon that peace officers conduct probation searches on the basis of oral representations by the probation officer. We are thus guided by the general test of reasonableness in determining the legality of the search which requires us to look to all of the circumstances known to the officers prior to implementing the search. (*People* v. *Gallegos* (1964) 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174].) In the present case the officers obtained a copy of appellant's probation conditions from appellant's probation officer which revealed that Palmquist was required to submit himself and his residence to warrantless searches. The officers subsequently undertook a search pursuant to the search condition. In our view, the searching officers reasonably and in good faith relied on the probation order given to them by the probation officer, and the search should not be invalidated simply because the copy of the order the officers received was technically deficient. (Cf. *People* v. *Spratt* (1980) 104 Cal.App.3d 562 [164 Cal.Rptr. 78] (search upheld even though police officers conducted search pursuant to minute order showing defendant to be on probation until a certain date when, in fact, defendant's probation had been revoked and defendant was on parole at the time with a similar search condition of which the officers had no knowledge).)

---

[8]A valid probation order was admitted into evidence at the preliminary hearing evidencing appellant's search condition.

■ Appellant lastly argues that assuming this court finds the officers reasonably believed the First Street apartment to be his residence, the search was nevertheless invalid because it was conducted subsequent to a warrantless arrest in a private residence without exigent circumstances. Appellant relies on *People v. Ramey, supra,* 16 Cal.3d 263, and *Payton v. New York* (1980) 445 U.S. 573 [63 L.Ed.2d 607, 100 S.Ct. 1349].

Respondent points out that the trial court lacked jurisdiction to entertain the renewed motion to suppress in which this argument was first advanced because *Ramey* was not new law at the time and *Payton* merely adopted the reasoning of *Ramey.* (See Pen. Code, § 1538.5, subd. (h); *People v. Superior Court (Edmonds)* (1971) 4 Cal.3d 605, 611 [94 Cal.Rptr. 250, 483 P.2d 1202].) As such there can be no appellate review of this issue. We agree and note that the argument lacks substantive merit as well.

It is true that warrantless arrests in the home are constitutionally impermissible where exigent circumstances do not exist to justify the arrest. However, it is equally clear that consent to enter also renders such entries reasonable. (*People v. Escudero* (1979) 23 Cal.3d 800 [153 Cal.Rptr. 825, 592 P.2d 312]; *Ramey, supra,* at pp. 275-276; *People v. Newton* (1980) 107 Cal.App.3d 568, 577 [166 Cal.Rptr. 60].) Here appellant expressly consented to warrantless searches of his residence as a condition of probation. Such consent constituted a voluntary waiver of whatever claim of privacy under the Fourth Amendment appellant might otherwise have had, and his refusal to answer the door did not vitiate that advance consent. (*People v. Mason, supra,* 5 Cal.3d 759, 763, 766.) No *Ramey* violation can occur on this state of facts. "[I]t is the intrusion into, rather than the arrest in, the dwelling which offends constitutional standards under *Ramey.*" (*People v. Evans* (1980) 108 Cal.App.3d 193, 196 [166 Cal.Rptr. 315]; see *People v. McCarter* (1981) 117 Cal.App.3d 894, 908 [173 Cal.Rptr. 188].) Since the officers had authorization to enter the home to search, the arrest inside was of no constitutional significance.[9] (*Ibid.*)

---

[9]Also note that Penal Code section 1203.2, subdivision (a), provides that a peace officer may rearrest a probationer during the probationary period "without warrant or other process" for violation of probation or for a subsequent offense. (*In re Thomas* (1972) 27 Cal.App.3d 31 [103 Cal.Rptr. 567]; *Pierce v. Board of Nursing etc. Registration* (1967) 255 Cal.App.2d 463 [63 Cal.Rptr. 107]; *In re Young* (1932) 121 Cal.App. 711 [10 P.2d 154].) The rationale behind section 1203.2, subdivision (a), is that because a probationer is in constructive custody of the probation officer, no war-

The judgment is affirmed.

Feinberg, J., and Barry-Deal, J., concurred.

---

rant is necessary. (*Pierce, supra*, at p. 467.) The *Ramey* rule would thus appear to be inapplicable to a probationer who is believed to have violated his probation conditions or to have committed some other offense.