[Crim. No. 4732. Fifth Dist. Aug. 5, 1981.]

THE PEOPLE, Plaintiff and Appellant, v.
DANNY RAY TIDALGO, Defendant and Respondent.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney

General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Appellant.

Haynes & Olpin and A. Edwin Olpin for Defendant and Respondent.

OPINION

**ZENOVICH, Acting P. J.**—The issue before us concerns the correctness of the lower court's dismissal of the proceeding on the basis that a search exceeded the terms of the search condition contained in respondent's terms of probation. For reasons which follow, we conclude the dismissal was proper.

Respondent was charged with unlawfully possessing marijuana for sale in violation of Health and Safety Code section 11359. After the municipal court denied his suppression motion and held him to answer on the charge, respondent renewed his suppression motion in superior court, coupling it with a motion to set aside the information pursuant to Penal Code section 995. The court granted both of respondent's motions and ordered the matter dismissed. The People appeal.

Sometime in August 1979, Sheri Everett, an acquaintance of respondent and his family, was arrested for passing bad checks. Upon arrival at the Arroyo Grande police station, she was also charged with having committed a grand theft of some jewelry which was missing from the residence belonging to respondent's sister-in-law, Linda Tidalgo, 125 East Cherry Street.[1] On August 15, 1979, Everett contacted Arroyo Grande Police Lieutenant William Andrews. She informed Andrews that on August 11, 1979, she had been at the Cherry Street residence, where respondent showed her several baggies of marijuana inside a cold case on the living room floor.[2] During her stay at the Cherry Street residence, Everett also saw respondent sell marijuana to someone.

After receiving this information, Andrews contacted Nancy Anderson, respondent's probation officer at the San Luis Obispo County Pro-

---

[1]Everett stated that the grand theft case was eventually dismissed, although the bad check case was still pending at the time of her preliminary hearing testimony.

[2]In his preliminary examination testimony, Andrews said that Everett informed him that the marijuana baggies were stored in a brown paper shopping bag in the area located next to the couch in the living room of the residence.

bation Office. Anderson advised Andrews that respondent was on probation pursuant to a court order dated August 24, 1977. She informed Andrews that one condition of respondent's probation was that he would "permit his person, residence, auto or possessions to be inspected or searched for contraband or weapons by his probation officer or any law enforcement officer at any time during his probationary term with or without probable cause and without prior notice of intent to inspect or search." After hearing about the information related to Andrews by Everett, Anderson authorized the lieutenant to conduct a search of respondent's residence.

At approximately 3:30 p.m. on August 15, 1979, Andrews and Detective John Tooley arrived at the Cherry Street residence. Andrews said the wooden front door to the residence was open and that the officers observed respondent standing in the living room area talking to an 11-year-old girl. After Tooley notified respondent that they were police officers and ascertained respondent's identity, he informed respondent that he needed identification of a piece of jewelry which was reported as stolen from the residence and subsequently recovered by another individual. Respondent told the officer "that as far as he could recall, he had seen the jewelry around the house, that that was one of the pieces that were [sic] taken, . . ."[3] Tooley then informed respondent that the officers had information about his having a large quantity of marijuana in the Cherry Street residence. When Tooley asked for respondent's consent to search the residence, respondent replied to the officers that "he couldn't allow us to search the residence because the residence belonged to his brother's wife."[4]

While standing in the doorway, Tooley noticed a parrot in a cage which he had seen approximately a year earlier in respondent's parents' residence on Branch Mill Road. Tooley also saw some fishing equipment in the front room area; although the officer knew respondent fished "quite a bit," he did not know to whom the equipment belonged. Other than the parrot and the fishing equipment, Tooley did not ob-

---

[3]The piece of jewelry shown to respondent was recovered from Carol Lundren. Subsequent testimony established that Lundren was arrested at the same time and on the same grand theft charge as Sheri Everett.

[4]Although Tooley did not know the identity of respondent's sister-in-law, he was aware that a prior theft had been committed from that residence and that the victim was Linda Tidalgo. Tooley conceded that he knew this at the time of the search and was familiar with the fact that she resided at the Cherry Street residence. Nevertheless, he did not know her relationship to respondent.

serve anything in the residence which he thought belonged to respondent; nonetheless, he mentioned the parrot to respondent and informed him "that we had information that he [respondent] was living at the house and that I could see some of his personal belongings in the front room." Tooley also saw what appeared to be marijuana debris, leaves and seeds, as well as paraphernalia associated with packaging marijuana for sale, near a television tray in the front room area. Consequently, the officers informed respondent that they were going to search the residence. Tooley thought that Andrews informed respondent that he had authorization to search from Nancy Anderson, although Andrews could not recall whether he said so.

Both officers stepped inside the residence, although Tooley conducted the actual search. From the front room area, Tooley seized the television tray, some debris, a baggie container, balance scales, and cigarette papers. Tooley then went to the master bedroom and found a red and white cold case containing 12 baggies of marijuana. He also discovered a green bag containing marijuana on the bed. Underneath the bed, the officers found a box containing eight photographs (two of which depicted respondent) and sixteen cancelled letters addressed to Linda Tidalgo from respondent. Tooley conceded that he found no men's clothing in the master bedroom closet. The officer also found additional debris and marijuana paraphernalia in the bathroom area of the residence.

According to Andrews, Everett related that respondent lived at the Cherry Street residence. Everett testified that she had been inside the Cherry Street residence on two occasions in 1979 and had only seen respondent during her August 11 visit. Everett conceded that she had visited respondent at his mother's residence approximately ten times, compared to the one occasion she saw him at his sister-in-law's house.

Respondent's mother, Madge Tidalgo, testified that respondent lived with her at 1075 Branch Mill Road in Arroyo Grande and that he had never lived at 125 East Cherry Street. She stated that her daughter-in-law by a different son, Linda Tidalgo,[5] lived at the Cherry Street residence. Respondent's mother noted that she and respondent often stopped by Linda's house because they were still on friendly terms with her. In addition, the mother indicated that she and respondent often took

---

[5]Respondent's mother indicated that Linda and her son had been separated for about two or three years. Nonetheless, she indicated that this son and respondent were still friendly with Linda.

their parrot to Linda's house, "because she has a parrot and we thought it might learn to talk because her parrot talks and [respondent's] parrot does not talk."

## Discussion

■ The People contend that the search of the Cherry Street residence was justified because the police "were reasonable in their belief that [respondent] 'resided' at the house in the sense that he lived there with some regularity and appeared to exercise dominion and control over the property and items therein." Conversely, respondent contends that the terms of the probationary search condition must be literally construed, thereby invalidating the search because it did not occur in "his residence." Moreover, respondent contends that the officers had no reasonable cause to believe that the Cherry Street house was his residence because of certain statements made before the search was conducted.

■ Recent case law has suggested that probationary search conditions should be literally construed in order to protect the rights of both probationers/parolees and nonprobationers/nonparolees who associate with the individual subject to the particular search condition. For example, several precedents have invalidated probationary/parole searches where the police had insufficient reason for believing that a particular item belonged to probationers/parolees rather than some guest or innocent third party. (See, e.g., *People* v. *Cruz* (1964) 61 Cal.2d 861, 866-867 [40 Cal.Rptr. 841, 395 P.2d 889]; *People* v. *Montoya* (1981) 114 Cal.App.3d 556, 562-563 [170 Cal.Rptr. 624]; *People* v. *Veronica* (1980) 107 Cal.App.3d 906, 909 [166 Cal.Rptr. 109]; *People* v. *Alders* (1978) 87 Cal.App.3d 313, 317-318 [151 Cal.Rptr. 77].) These cases are in contrast to decisions where such searches have been validated because officers had searched areas occupied by or items used by both the probationer/parolee and a companion, cotenant or closely related third party. (See, e.g., *People* v. *Johnson* (1980) 105 Cal.App.3d 884, 888 [164 Cal.Rptr. 746]; *People* v. *Icenogle* (1977) 71 Cal.App.3d 576, 586-587 [139 Cal.Rptr. 637]; *Russi* v. *Superior Court* (1973) 33 Cal. App.3d 160, 170 [108 Cal.Rptr. 716].) However, where police officers do not know who owns or possesses a residence or item and such information can be easily ascertained, it is incumbent upon them to attempt to ascertain ownership in order to protect the privacy interest of both probationer and nonprobationer. (Cf., *People* v. *Cruz, supra,* 61 Cal.2d

861, 867; *People* v. *Montoya, supra*, 114 Cal.App.3d 556, 562-563.)[6] If it is objectively unreasonable for officers to believe that the residence or item falls within the scope of a search condition, any evidence seized will be deemed the product of a warrantless search absent other considerations. (Cf., *People* v. *Alders, supra*, 87 Cal.App.3d 313, 317-318.)[7] Whether the officer's belief is objectively reasonable would usually be a factual question to be resolved by the court hearing the suppression motion. (*People* v. *Icenogle, supra*, 71 Cal.App.3d 576, 585.)

 Upon reviewing the record, we conclude that there was substantial evidence for the suppression court's opinion that the Cherry Street house was not respondent's residence. Tooley's testimony indicated that he knew respondent stayed at his mother's residence on Branch Mill Road about a year before the present incident. In addition, Tooley indicated knowing that respondent's sister-in-law lived at the Cherry Street residence. Madge Tidalgo, respondent's mother, testified that he lived with her and never stayed overnight at Linda Tidalgo's residence. His mother also accounted for the presence of the parrot and cage which Tooley thought he had seen at the Branch Mill Road residence —she and respondent frequently visited Linda and attempted to get their parrot to emulate Linda's bird. Although Tooley felt that the presence of fishing equipment might indicate that respondent often stayed at the Cherry Street residence, he admitted that he did not know who owned the equipment. Respondent's mother also testified that he slept and kept his clothes at her residence; this was corroborated when Tooley admitted that he found no men's clothing when searching the bedroom closet of the Cherry Street residence. Moreover, the record shows that respondent even informed officers that he could not give consent to search the Cherry Street house because it was his sister-in-

---

[6]In *Cruz*, our Supreme Court suggested that officers can engage in a simple questioning procedure to insure that the ownership of the item to be searched lies with the individual giving nod to a consensual search. (*Cruz, supra*, 61 Cal.2d at p. 867.) This court, in *Montoya*, suggested that a parole agent should inquire about ownership when there was but a 50-50 chance that some jeans belonged to a parolee. This court stated: "As in *Cruz*, Agent Heberle could have avoided an unwarranted intrusion into an article of clothing belonging to appellant (a transient guest) by asking her if the cutoffs belonged to her, or by asking [the parolee] if they belonged to her. Such a simple questioning procedure would have protected appellant's expectation of privacy as it related to her jeans." (*Montoya, supra*, 114 Cal.App.3d at p. 563.)

[7]In *Alders*, the court held that the police exceeded the permissible scope of a valid probation search when they searched a distinctly female coat with no reason to suppose that it was jointly shared by the male probationer and his female cotenant. (*Alders, supra*, 87 Cal.App.3d at pp. 317-318.)

law's residence. Finally, even though Sheri Everett had indicated to officers that the Cherry Street house was respondent's residence, she testified at the suppression hearing about only seeing respondent there on two occasions, compared to seeing him at his mother's home on ten prior occasions.

Although the evidence was susceptible of different interpretations, we believe the foregoing proof amply supports the suppression court's conclusion that it was unreasonable for officers to believe that the Cherry Street residence was occupied or owned by respondent. Thus, we are bound by the factual resolution of the lower court, and its ruling should not be disturbed on appeal. (*People* v. *Superior Court* (*Keithley*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; *Ondarza* v. *Superior Court* (1980) 106 Cal.App.3d 195, 205-206 [164 Cal.Rptr. 892]; cf. *People* v. *Spratt* (1980) 104 Cal.App.3d 562, 568 [164 Cal. Rptr. 78]; *People* v. *Icenogle, supra*, 71 Cal.App.3d 576, 585.)

The order of dismissal is affirmed.

Andreen, J., and McIntosh, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.