[No. C037999. Third Dist. Jan. 30, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
PAMELA SMITH, Defendant and Appellant.

Counsel

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Carlos A. Martinez and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**NICHOLSON, J.**—Following the denial of her special motion to suppress evidence (Pen. Code, § 1538.5), defendant Pamela Smith entered a plea of nolo contendere to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). She was placed on probation for a period of 36 months.

Defendant's sole claim on appeal is the trial court erred in denying her motion to suppress. The appeal is authorized by Penal Code section 1538.5, subdivision (m).

On the afternoon of January 2, 2000, officers of the Placerville Police Department went to the residence of John Kelsey, who was on probation. For purposes of the instant appeal, defendant accepts that the conditions of Kelsey's probation included consent to a search of his person and residence.

When the officers arrived at the house, there were six people inside, including defendant. Defendant indicated she shared the rear bedroom of the residence with Kelsey. Officers Santos and Barbot searched the bedroom and found various items containing marijuana and methamphetamine. For example, a clear plastic baggie containing marijuana was found in the pocket of a robe hanging in the closet. Clear plastic baggies containing methamphetamine residue were found in knickknack containers on a shelf on the wall. Baggies containing a white powder residue were found in a wooden box. A line of cut methamphetamine was discovered on a mirror inside a fold-up desk. The officers also discovered three narcotic smoking pipes in a cloth box on a shelf.

Defendant advised the officers there was a gun in the safe located in the bedroom closet. Officer Santos asked defendant about the key to the safe. Defendant said the key was inside her purse, which was hanging on the closet door in the bedroom. Defendant gave Officer Santos permission to go

inside the purse to locate the key.[1] After retrieving the key from the purse, Officer Santos apparently placed the purse on the bed.

The officers called Officer Tawney to the scene. Officer Tawney brought along a narcotics police dog for the purpose of conducting a more thorough search. Following a perimeter search of the bedroom, the dog jumped onto the bed and "gave an indication" on the purse lying on the bed. The officers opened the purse and inspected its contents, which included a clear plastic bag containing a substance believed to be methamphetamine.

In moving to suppress the narcotics found in the purse, defendant argued the purse, being a distinctly female item, was not part of the search conditions to which Kelsey had submitted and, accordingly, the officers were required to obtain a warrant before entering the purse to search for drugs.

The trial court concluded otherwise: "[T]he rationale appeals to me . . . [that] somebody who is in that situation knowingly living with someone who is subject to search by the police doesn't have the same—and living in the same room where the contraband is found in this purse[—]doesn't have the same expectation of privacy as there would exist under different facts.

"And I will find for the record that this appears to be a female purse. It is a blue knit bag, no design on it. There is some kind of lining in it that has flowers or something on it which, you know, all things considered probably could be considered female . . . . [T]here is no evidence that Mr. Kelsey uses a purse, so I guess that is what makes it distinguishing.

"I think the better rationale is . . . if you're in a situation where a person even in possession of [her] own female items lives in a room, in a bedroom with a probationer where the probationer has complete and full access to all items in that room that he shares with her, [and] . . . where you have facts that would indicate joint possession, ownership, or control of an item by the probationer and the other person, that that's a legitimate situation for search by the police.

"I think that is the only rule that makes sense, otherwise we're going to be engaged in a process of separating all the items in the room, determining female, male, . . . requiring the officer to ask the female whether these items are hers.

"I think the better rule is . . . that you don't have to ask, the officers can act on what is reasonable under the circumstances.

---

[1] Defendant denied giving the officer permission to enter her purse to retrieve the key, but the trial court resolved the conflict in favor of Officer Santos's testimony that permission had been granted.

"And I'm adopting a bright line rule here to say . . . under our facts that the officers have a legitimate right to search the items found in the room. [¶] . . . [¶]

"[U]nder these facts where they are living in the same room, he's a probationer, there is a likelihood that [they] were sharing in a criminal enterprise with drugs and paraphernalia found in the room. [I]n that situation there's joint possession, control by both items—by both residents and therefore the police . . . acted lawfully in this case."

## DISCUSSION

█ In this state, a probationer may validly consent in advance to a warrantless search of his home in exchange for the opportunity to avoid state prison incarceration. (*People v. Robles* (2000) 23 Cal.4th 789, 795 [97 Cal.Rptr.2d 914, 3 P.3d 311].) The legality of such warrantless searches has been upheld by the California courts for at least three decades. (See *ibid.*, and authorities cited therein.)

It is also established a warrantless search, justified by a probation search condition, may extend to common areas, shared by nonprobationers, over which the probationer has "common authority." (*United States v. Matlock* (1974) 415 U.S. 164, 171 [94 S.Ct. 988, 993 [39 L.Ed.2d 242, 250].) The "common authority" theory of consent rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (*Id.* at p. 171, fn. 7 [94 S.Ct. at p. 993].)

█ A search of "common areas" is, however, limited in scope: "In all cases, a search pursuant to a probation search clause may not exceed the scope of the particular clause relied upon. [Citation.] Nor may such a search be undertaken in a harassing or unreasonable manner. [Citations.] Moreover, officers generally may only search those portions of the residence they reasonably believe the probationer has complete or joint control over. [Citation.] That is, unless the circumstances are such as to otherwise justify a warrantless search of a room or area under the sole control of a nonprobationer (e.g., exigent circumstances), officers wishing to search such a room or area must obtain a search warrant to do so." (*People v. Woods* (1999) 21 Cal.4th 668, 682 [88 Cal.Rptr.2d 88, 981 P.2d 1019].)

In short, the need to supervise those who have consented to probationary searches must be balanced against the reasonable privacy expectations of

those who reside with probationers. "Even though a person subject to a search condition has a severely diminished expectation of privacy over his or her person and property, there is no doubt that those who reside with such a person enjoy measurably greater privacy expectations in the eyes of society. For example, those who live with a probationer maintain normal expectations of privacy over their persons. In addition, they retain valid privacy expectations in residential areas subject to their exclusive access or control, so long as there is no basis for officers to reasonably believe the probationer has authority over those areas. [Citations.] That persons under the same roof may legitimately harbor differing expectations of privacy is consistent with the principle that one's ability to claim the protection of the Fourth Amendment depends upon the reasonableness of his or her individual expectations. [Citations.]" (*People v. Robles, supra,* 23 Cal.4th at p. 798.)

Defendant relies on *People v. Veronica* (1980) 107 Cal.App.3d 906 [166 Cal.Rptr. 109] for her assertion the search was illegal. In *Veronica,* the defendant was on parole. When the police went to the defendant's house to conduct a search, the defendant was not at home. The defendant's wife admitted the officers and a search commenced. In areas of the home shared by the defendant and others, the officers found drugs and related paraphernalia. In a female purse found hanging on the rear of the bedroom door, the officers found $1,500 in small bills. (*Id.* at p. 908.)

On appeal, the defendant argued all the evidence should be suppressed because the police had searched property clearly belonging to his wife. In the alternative, the defendant moved to suppress the cash found in the purse. Without any discussion or analysis as to the manner in which the search was conducted, the timing in which the various drug-related items were discovered, or the location of the offending items (e.g., a dresser shared by the defendant and his wife, a closet containing items belonging to both, etc.), the *Veronica* court agreed with the defendant's argument the contents of the purse must be suppressed: " 'The search of [the wife's purse] is an entirely different matter. She was under no order to submit to a warrantless search and there was no reason to suppose that a distinctly female [purse] was jointly shared by her and [the defendant]. Neither reason nor authority support the proposition that police may conduct a general search of the private belongings of one who lives with a [parolee].' " (*People v. Veronica, supra,* 107 Cal.App.3d at p. 909.)

The *Veronica* court continued, however: "We do not, of course, suggest that simply because a garment or container is clearly designed for a person other than the parolee, it may never be searched under the parolee's prerelease consent. The particular circumstances may indicate that the object is,

in fact, one of the parolee's own effects or, at least, jointly possessed by him and another. In this case, however, there was nothing to overcome the obvious presumption that the purse [belonged to the wife], not [the defendant]." (*People v. Veronica, supra,* 107 Cal.App.3d at p. 909; *People v. Alders* (1978) 87 Cal.App.3d 313, 317-318 [151 Cal.Rptr. 77] [same].)

The People rely on *People v. Boyd* (1990) 224 Cal.App.3d 736 [274 Cal.Rptr. 100], which also concerned a search of the residence—a one-room trailer—of a parolee who was subject to a search condition. While searching the trailer, the officers noticed articles of female clothing on the floor. They then discovered a brown leather bag described as gender-neutral in appearance. The bag was found on the bed shared by the parolee and defendant Boyd, the parolee's girlfriend. A search of the bag revealed a quantity of drugs. The officers then asked Boyd if the purse belonged to her, and she replied affirmatively. (*Id.* at pp. 739-740.)

On appeal, Boyd argued the search of her purse was outside the scope of the parole consent, as the purse was obviously a feminine object and, therefore, not reasonably under either the joint or exclusive control of the parolee. The *Boyd* court disagreed, concluding it was reasonable for the officers to assume the parolee had either joint or exclusive control over the purse. The court also held the officers had no obligation to ask defendant if the purse was hers prior to searching it: "[T]he critical issue is whether the officers reasonably suspected the handbag was owned or controlled by a parolee. If so, it was within the scope of the parole search. The appearance of the object searched is but one of many factors to consider in assessing whether the reasonable suspicion standard was satisfied." (*People v. Boyd, supra,* 224 Cal.App.3d at pp. 745-746, 749-750.)

■ We agree with *Boyd* the reasonable suspicion standard may be satisfied based on an examination of the totality of the circumstances surrounding the search. In this case, the trial court found the officers were right to conclude defendant and Kelsey jointly controlled all the items in the bedroom they shared. The contraband discovered in the room was hidden in repositories scattered throughout: The marijuana was in the pocket of a robe hanging in the closet; the line of cut methamphetamine was on a mirror inside a fold-out desk three feet from the bed; baggies with a white powder residue were discovered in a wooden box; the unused "scraper" bags were found in knickknack containers on a wall shelf; and the three narcotic smoking pipes were in a cloth box on a shelf.

Also of significance, and not surprisingly, a gun was concealed in a safe located in the bedroom shared by defendant and Kelsey. "Illegal drugs and

guns are a lot like sharks and remoras. And just as a diver who spots a remora is well-advised to be on the lookout for sharks, an officer investigating [a drug operation] would be foolish not to worry about weapons." (*People v. Simpson* (1998) 65 Cal.App.4th 854, 862 [76 Cal.Rptr.2d 851].) Of importance to the instant case, however, is that *the key to the safe was inside defendant's purse.*

Given the significance of both drugs and weapons located in the same area, two conclusions immediately come to mind. First, defendant and Kelsey were sharing in a criminal enterprise; if so, it would not be surprising for the key to the safe to be in defendant's purse. Or, second, Kelsey alone was involved with the illicit narcotics, but he was using the purse, with defendant's knowledge, as a repository. Unfortunately for defendant, neither conclusion bodes well for her claim the purse should have been off-limits to the searching officers, because in either instance the clear inference is that the purse was an item over which Kelsey had access, if not control.

As the trial court noted, in light of the drugs and paraphernalia found by the officers, it was evident the bedroom was being used for a criminal enterprise. It is also true there was no "his" or "her" pattern to any of the areas/repositories in the bedroom where the illicit substances were discovered. Thus, the question was not whether the purse was "female" or gender-neutral; the critical issue was whether the officers reasonably believed the item was one under Kelsey's control or one to which he at least had access. (*People v. Woods, supra,* 21 Cal.4th at p. 682 [officers may search those portions of the residence over which they reasonably believe the probationer has complete or joint control].)

Equally important, the instant search did not exceed the scope of the consent relied upon (*People v. Woods, supra,* 21 Cal.4th at p. 682), nor can it be argued the search was undertaken in a harassing or unreasonable manner. (*Ibid.*) The officers limited their search only to the room occupied by Kelsey, and searched only those items over which they reasonably believed Kelsey had complete or joint control.

"Those associating with a probationer assume the ongoing risk that *their property and effects* in common or shared areas of a residence may be subject to search." (*People v. Woods, supra,* 21 Cal.4th at p. 684 (dis. opn. of Brown, J.), italics added; see also *People v. Triche* (1957) 148 Cal.App.2d 198, 203 [306 P.2d 616] [wife or companion of parolee may not "complain of violation of her right of privacy, which because of her living with a parolee subject to special rules of supervision, must be to some extent restricted in the public interest"].) Here, once it was determined *the bedroom* Kelsey and

defendant shared was being used for a criminal enterprise, there was no reason for the officers not to believe the purse, regardless of its appearance, was one being jointly used, even if not jointly owned, by the probationer subject to search. (*People v. Boyd, supra*, 224 Cal.App.3d at p. 750 ["The reasonable suspicion standard should also be used to determine whether a particular object is within the scope of the parole search being conducted."].)

Under these facts, we find no reason to take issue with the scope of the search or with the fruits of that search. The trial court did not err in denying the motion to suppress.

## Disposition

The judgment is affirmed.

Scotland, P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 10, 2002. George, C. J., did not participate therein.