Filed 3/5/13  P. v. Easley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

| | |
|---|---|
| THE PEOPLE, | C066266 |
| Plaintiff and Respondent, | (Super. Ct. No. P04CRF0045) |
| v. | |
| GARY DANIEL EASLEY, | |
| Defendant and Appellant. | |

Following the denial of his motion to suppress the evidence (Pen. Code, § 1538.5)[1], defendant Gary Daniel Easley pleaded no contest to misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) in exchange for deferral of judgment and dismissal of the remaining charges.  Defendant was granted deferred entry of judgment (diversion) under the provisions of section 1000 et seq., but thereafter twice admitted failing to comply with the terms of his diversion.  Following defendant's second

---

[1] Further undesignated statutory references are to the Penal Code.

1

violation, the trial court terminated his diversion, placed him on 24 months summary probation, and ordered him to serve 90 days in county jail.

Defendant, in pro. per., appeals, contending the trial court erred in denying his motion to suppress, holding him over to trial following his preliminary hearing, and denying his motion to disqualify Judge Eddie Keller. Defendant also contends his trial counsel was ineffective, and that defendant was not required to abide by the terms and conditions of his deferred entry of judgment based on the state's representation in a federal habeas proceeding that it did not have custody over him in this case. Having reviewed the entire record, we discern no error by the trial court and shall conclude that defendant failed to meet his burden of establishing his trial counsel was deficient and/or that defendant was prejudiced by trial counsel's alleged deficiencies.[2] Accordingly, we shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Because defendant entered a plea of no contest, we recount the facts from the preliminary hearing transcript.

At 11:30 p.m. on January 15, 2004, El Dorado County Sheriff's Deputies Bears and Starr went to a residence in Pollock Pines to serve a felony arrest warrant on defendant and conduct a probation search of Jennifer Crow. When they arrived Bears went to the back of the house and saw a man and a woman sitting on a couch watching television. Meanwhile, Starr knocked on the front door and defendant answered. Defendant identified himself, Starr informed him there was a warrant for his arrest, and Starr arrested him.

---

[2] Defendant's motion to strike respondent's brief on the grounds it is not signed by the Attorney General in handwriting and the certificate of service accompanying the brief is unsigned is denied.

2

Before going to the residence, Bears learned that Crow also resided at that address, and that she was on searchable probation for drugs. After defendant was arrested, Bears entered the residence and spoke to the woman he had seen sitting on the couch. She identified herself as Jennifer Crow and admitted she was on searchable probation. Deputies conducted a search of the premises based on the fact that Crow was on searchable probation. They found a methamphetamine pipe and a white powder residue on a plate next to the couch where defendant and Crow had been sitting. Defendant said, "[T]hat's mine. That ain't hers." Another methamphetamine pipe was found on the dining room table along with a compact disc with methamphetamine on it. A drinking straw with white residue inside it "consistent with a snorting device" and a piece of tin foil with burn marks "consistent with a method a person uses to . . . inhale methamphetamine smoke" were found in an upstairs bedroom.

As the deputies were about to transport defendant to jail, defendant asked them if they could retrieve his wallet. Bears followed Crow upstairs, and she directed him to a pair of men's pants on a bed. Bears looked inside the pants, located a wallet, opened it, and found a baggie containing more methamphetamine. The methamphetamine found in the wallet weighed 0.9 grams, including the packaging. The wallet also contained defendant's identification. Bears searched the wallet because defendant had asked to take it with him to jail.

## DISCUSSION

### I

### The Trial Court Properly Denied Defendant's Motion to Suppress

Defendant contends the trial court erred in denying his motion to suppress evidence because the warrant for his arrest had been recalled prior to his arrest, he advised the deputies of that fact, and the deputies acted unreasonably in failing to call defendant's bondswoman "to rectify the situation," the deputies began searching the

3

residence before ascertaining Crow's identity, and the scope of the search was not reasonable.

Prior to entering his no contest plea, defendant moved to suppress evidence found in his residence on January 15, 2004. According to defendant, the deputies searched his residence *before* confirming that Crow was the woman at the residence. Defendant argued that once he was arrested, deputies "had no business further entering the house to even ask [the woman] what her name was. . . . [¶] Once they go past him, that right there becomes a violation of his Fourth Amendment rights." At the hearing on the motion to suppress, defendant further asserted that his rights under the Fourteenth Amendment to the United States Constitution were violated because he was never advised that if he associated with a probationer such as Crow he was essentially waiving *his* right to privacy.

The following evidence was before the trial court at the hearing on the motion to suppress: Deputies Bears and Starr were members of the El Dorado County Sherriff's Office special enforcement detail--a "crime suppression unit." As members of that unit, their duties included "warrant service [and] probation/parole searches." At 11:30 p.m. on January 15, 2004, they went to a residence in Pollock Pines to serve an arrest warrant on defendant and to conduct a probation search of Crow. Before going to that residence, Bears ran the address through the department's computer service and learned that a woman named Jennifer Crow resided there. Thereafter, he reviewed his "searchable probation list" and discovered that Crow was on searchable probation.

When the deputies arrived at the residence, Bears looked through a window and saw a man and a woman sitting on a couch watching television. Meanwhile, Starr knocked on the door, defendant answered, and Starr immediately placed defendant under arrest. Bears entered the residence and spoke to the woman he had seen sitting on the couch. She identified herself as Jennifer Crow and acknowledged she was on searchable probation. Thereafter, Bears conducted a search of the premises. He found a

methamphetamine pipe and a white powder residue on a plate next to the couch where defendant and Crow had been sitting. Defendant told Starr, "[T]hat's mine. That ain't hers." Another methamphetamine pipe was found on the dining room table along with a compact disc with methamphetamine on it.

As they were getting ready to leave, defendant asked if he could take his wallet. Crow went upstairs to a bedroom to get it and Bears followed. Bears asked Crow if she and defendant slept in that bedroom, and she said that they did. Crow motioned to a pair of pants on the bed and stated that defendant's wallet was inside. Bears retrieved the wallet, looked inside, and found a small baggie containing methamphetamine, weighing 0.9 grams, including packaging. The wallet also contained defendant's identification.

Crow testified that the deputies began searching the residence before ascertaining her identity. She told the deputies that she did not live at the residence. The previous year she told a woman from the health department that she was staying there. Crow denied that defendant asked for his wallet. Rather, he asked for his shoes, and Crow went upstairs to get them. She acknowledged that she was on probation on the date in question and was subject to search.

Defendant testified that at the time of his arrest, he was living at the residence in Pollock Pines with his mother. When he opened the door on the night in question, he told Starr about the warrant before Starr even mentioned it. Defendant explained that the warrant had been recalled around 8:00 a.m. that morning. Defendant told Starr and Bears to telephone his bail bondswoman because she had warned him "that this was going to happen pretty much or to be careful." Starr handcuffed defendant, sat him down, and then began "going through stuff." At this point, Crow was sitting next to him, and defendant did not believe that the deputies had asked her for her name. Defendant denied asking for his wallet.

A month earlier, in December 2003, an officer with the El Dorado County Sherriff's Department went to the same residence in Pollock Pines to serve an arrest

warrant on Crow. After executing the warrant, he conducted a search incident to arrest and found a letter from the department of social services addressed to Crow at that address.

The trial court denied the motion to suppress. It found "the officers could lawfully go to the premises to actively pursue the warrant to arrest [defendant]," and that "Bears knew prior to going to the premises that Jennifer Crow was associated with the premises and that she was on searchable probation." The court credited Bears's testimony that he and Starr did not search the premises until after confirming Crow's identity and the fact she was on searchable probation; the court did not credit Crow's testimony to the contrary. The court concluded that "[o]nce they identified her as being present on the premises, knowing previously that she was on searchable probation and that she acknowledges she was searchable, the officers had full authority to search the premises . . . ." With respect to defendant's wallet, the court found that defendant "did ask to retrieve his wallet," and thus, "waived any right that he had for privacy on the wallet . . . ." Finally, the court rejected defendant's claim that his rights under the Fourteenth Amendment were violated by the state's failure to advise him that if he associated with a probationer, such as Crow, he was waiving his privacy rights.

The Fourth Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

" '[I]n reviewing a determination on a motion to suppress, we defer to the trial court's factual findings which are supported by substantial evidence and independently determine whether the facts of the challenged search and seizure conform to the constitutional standard of reasonableness.' " (*People v. Ferguson* (2003)

6

109 Cal.App.4th 367, 371.) We are "bound by the trial court's resolution of disputed facts and inferences as well as its evaluations of credibility, including [those that] seemed either untruthful or inaccurate, where . . . the findings are supported by substantial evidence." (*People v. Troyer* (2011) 51 Cal.4th 599, 613.) "If the challenged police conduct is shown to be violative of the Fourth Amendment, the exclusionary rule requires that all evidence obtained as a result of such conduct be suppressed." (*People v. Williams* (1988) 45 Cal.3d 1268, 1299.)

The burden is on the defendant to show that law enforcement officers acted unlawfully. (*People* v. *Williams, supra,* 45 Cal.3d at p. 1300.) A warrantless entry by the police into a residence is at least presumptively unreasonable and therefore unlawful, and the burden is on the prosecution to prove otherwise. (*Id.* at pp. 1297, 1300.) A search incident to a lawful arrest is a well-settled exception to the warrant requirement of the Fourth Amendment. (*Chimel* v. *California* (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 694].)

In addition, "[i]n this state, a probationer may validly consent in advance to a warrantless search of h[er] home in exchange for the opportunity to avoid state prison incarceration. [Citation.] . . .

"It is also established a warrantless search, justified by a probation search condition, may extend to common areas, shared by nonprobationers, over which the probationer has 'common authority.' [Citation.] The 'common authority' theory of consent rests 'on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' [Citation.]

"A search of 'common areas' IS, HOWEVER, LIMITED IN SCOPE: 'In all cases, a search pursuant to a probation search clause may not exceed the scope of the

7

particular clause relied upon. . . . Moreover, officers generally may only search those portions of the residence they reasonably believe the probationer has complete or joint control over. [Citation.] That is, unless the circumstances are such as to otherwise justify a warrantless search of a room or area under the sole control of a nonprobationer (e.g., exigent circumstances), officers wishing to search such a room or area must obtain a search warrant to do so.' [Citation.]

"In short, the need to supervise those who have consented to probationary searches must be balanced against the reasonable privacy expectations of those who reside with probationers. 'Even though a person subject to a search condition has a severely diminished expectation of privacy over his or her person and property, there is no doubt that those who reside with such a person enjoy measurably greater privacy expectations in the eyes of society. For example, those who live with a probationer maintain normal expectations of privacy over their persons. In addition, they retain valid privacy expectations in residential areas subject to their exclusive access or control, so long as there is no basis for officers to reasonably believe the probationer has authority over those areas. [Citations.]' " (*People v. Smith* (2002) 95 Cal.App.4th 912, 916-917.)

Here, deputies went to the residence in Pollock Pines to execute an arrest warrant for defendant *and to perform a probation search on Crow*. While defendant disputes that Crow resided at that address, the trial court found otherwise, and its finding is supported by substantial evidence. Sherriff's department records listed Crow as residing at that address. Crow was present at the residence at 11:30 p.m. when the deputies arrived. When asked whether both she and defendant slept in the same upstairs bedroom, she responded, "[Y]es." She was arrested at the residence a month earlier, and during a search incident to that arrest, officers found a letter addressed to her at that address.[3]

---

[3] To the extent defendant asserts his trial counsel was ineffective for failing to object to the admission of the letter on the ground it was the product of an illegal search, the

Accordingly, deputies were permitted to "search those portions of the residence they reasonably believe[d] [Crow] ha[d] complete or joint control over." (*People v. Smith, supra,* 95 Cal.App.4th at p. 916.) In doing so, the deputies found a methamphetamine pipe and a white powder residue on a plate next to the couch where defendant and Crow had been sitting, and another methamphetamine pipe on the dining room table along with a compact disc with methamphetamine on it.[4]

Defendant's suggestion that the court erred in concluding Crow resided at the house because his mother had obtained a restraining order prohibiting Crow from coming within 100 feet of the residence lacks merit. The existence of a restraining order did not preclude the trial court from concluding Crow resided at that address. It simply meant that Crow was residing there in violation of the restraining order -- a fact that had no bearing on the legality of the search of the residence. In other words, the fact that her presence may have been in violation of a restraining order did not preclude the deputies from searching those areas of the residence over which the deputies reasonably believed Crow had joint control.

While defendant asserts that the deputies searched the residence *before* ascertaining Crow's identity, the trial court credited Bears's version of events, and we are

---

assertion fails because he cannot establish he was prejudiced by the alleged error. (See *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.) Absent the letter, substantial evidence supported the trial court's finding Crow resided with defendant. Namely, she was there at 11:30 p.m. on the night in question, she had been there a month earlier when officers arrived to execute a warrant for her arrest, and she acknowledged she and defendant both slept in the same upstairs bedroom.

[4] To the extent defendant complains that *Crow* "was not warned in open court, that the denial of inalienable rights was to effect, potentially, those individuals who invite her into their home for an intimate relationship" or that *Crow* was allegedly strip searched, he lacks standing to raise such claims. (See *People v. Badgett* (1995) 10 Cal.4th 330, 353 ["The constitutional right to be free from unreasonable searches and seizures is a personal one that cannot be asserted vicariously."].)

bound by the trial court's credibility determinations. (See *People v. Ferguson, supra,* 109 Cal.App.4th at p. 371.) The trial court properly declined to suppress the evidence seized from the living and dining rooms.

Defendant's claim that the probation search of his residence violated his rights under the Fourth and Fourteen Amendments to the United States Constitution likewise lacks merit. While "those who live with a probationer maintain normal expectations of privacy over their persons" and "retain valid privacy expectations in residential areas subject to their *exclusive* access or control," they have a diminished expectation of privacy in those portions of the residence over which the probationer has joint control. (*People v. Smith, supra,* 95 Cal.App.4th at p. 917.) " 'That persons under the same roof may legitimately harbor differing expectations of privacy is consistent with the principle that one's ability to claim the protection of the Fourth Amendment depends upon the reasonableness of his or her individual expectations. [Citations.]' " (*Ibid*.)

The deputies also seized methamphetamine from defendant's wallet, which they found inside a pair of his pants, which were in the upstairs bedroom. Whether Crow can be said to have had joint control over all items located in the bedroom she shared with defendant is irrelevant because defendant asked the deputies if he could take his wallet with him to jail. Having asked the deputies to retrieve his wallet, he had no reasonable expectation of privacy in the same. Accordingly, Bears's search of the wallet did not violate defendant's rights under the Fourth Amendment.

Defendant also asserts that deputies acted unreasonably in not contacting his bail bondswoman after he informed them that the warrant had been recalled. Defendant claims that had the deputies contacted his bondswoman, he "would not have needed to be arrested," and thus, "[a]nything of an illegal nature allegedly discovered after [his arrest] should be suppressed." Defendant, however, forfeited this argument by failing to raise it in the trial court.

10

"[A] section 1538.5 motion 'must specify the precise grounds for suppression of the evidence in question . . . .' " (*People v. Oldham* (2000) 81 Cal.App.4th 1, 12, quoting *People v. Williams* (1999) 20 Cal.4th 119, 130.) " 'Defendants who do not give the prosecution sufficient notice of these inadequacies cannot raise the issue on appeal.' " (*People v. Oldham*, *supra*, 81 Cal.App.4th at p. 11, quoting *People v. Williams*, *supra*, 20 Cal.4th at p. 136.) In his motion to suppress, defendant argued only that the search was invalid because it occurred after he was arrested and exceeded the permissible scope of a search incident to his arrest, the deputies did not know that Crow was the woman at the residence at the time of the search, and he had not been advised that he was waiving his right to privacy by associating with Crow. At no point did he claim that the deputies acted unreasonably in failing to contact defendant's bail bondswoman. While defendant testified that his bail bondswoman told him that the warrant had been recalled earlier that morning and that he had asked the deputies to contact her, he did not argue the deputies were unreasonable in failing to do so or otherwise challenge the warrant's validity. Because this argument was not raised at the trial court level, the prosecution had no opportunity to rebut it, and it cannot be raised for the first time on appeal. (*People v. Oldham*, *supra*, 81 Cal.App.4th at pp. 11-12.)

Perhaps anticipating this outcome, defendant argues alternatively that his trial counsel's failure to make the argument was ineffective assistance of counsel. As discussed in more detail below, to establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient *and* that defendant suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691-692; [80 L.Ed.2d 674, 693, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) Absent a showing that the arrest warrant was invalid, defendant cannot establish that he was prejudiced by counsel's alleged deficiency in failing to argue the deputies acted unreasonably in failing to contact defendant's bail bondswoman before arresting him.

11

Evidence defendant's bail bondswoman advised defendant that the arrest warrant had been recalled is insufficient to establish the warrant was, in fact, invalid.

On this record, we conclude the trial court properly refused to suppress the evidence seized from defendant's residence on January 15, 2004.

## II
### Defendant Forfeited Any Challenge to the Holding Order

Defendant next contends that the trial court erred in holding him to answer on the charges following the preliminary hearing because there was insufficient evidence that he possessed a usable amount of methamphetamine. As we shall explain, defendant forfeited this argument by failing to file a motion pursuant to section 995. His assertion that his trial counsel was ineffective in failing to bring such a motion likewise fails.

" 'The purpose of a motion to set aside the accusatory pleading under . . . section 995 is to review the sufficiency of the indictment or information on the basis of the record made before the grand jury in the one case or the magistrate at the preliminary hearing in the other.' " (*People v. Sherwin* (2000) 82 Cal.App.4th 1404, 1411.) A motion in the trial court under section 995 is the exclusive method for challenging the legality of the commitment. (*In re Berry* (1955) 43 Cal.2d 838, 844.) Failure to move to set aside the information pursuant to section 995 forfeits any subsequent challenge to the sufficiency of the evidence presented at the preliminary hearing. (§ 996 ["If the motion to set aside the indictment or information is not made, the defendant is precluded from afterwards taking the objections mentioned in Section 995."]; *In re Wells* (1967) 67 Cal.2d 873, 875 [failure to move to set aside information under section 995 "waive[s]" defendant's right to question the legality of his commitment].)

Here, the trial court found there was sufficient evidence to hold the defendant to answer on each of the counts alleged in the information, including a violation of section 11377, subdivision (a), of the Health & Safety Code. Defendant did not

12

challenge the sufficiency of the preliminary hearing evidence in the trial court under section 995, and his failure to do so forfeited any such challenge on appeal.

To the extent defendant asserts his trial counsel was ineffective in failing to bring such a challenge, the assertion fails. "An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Frazzini v. Superior Court* (1970) 7 Cal.App.3d 1005, 1015-1016.) "Evidence that will justify a prosecution need not be sufficient to support a conviction. [Citations.] Every legitimate inference that may be drawn from the evidence must be drawn in favor of the determination of probable cause." (*Id.* at p. 1015; see also *People v. Superior Court (Costa)* (2010) 183 Cal.App.4th 690, 699.) "And, while there must be *some* showing as to the existence of each element of the crime, such a showing may be made by means of circumstantial evidence supportive of reasonable inferences." (*People v. Superior Court (Costa)*, *supra*, 183 Cal.App.4th at p. 699.)

Here, a small baggie of methamphetamine weighing 0.9 grams, including packaging, was found in defendant's wallet. Accordingly, there is some evidence from which a reasonable inference of defendant's unlawful possession of a usable amount of methamphetamine may be drawn, and there is, therefore, a rational basis for the trial court's finding of probable cause. Accordingly, defendant's counsel was not deficient in failing to file a motion pursuant to section 995 in the trial court.[5]

_____

[5] Nor was he deficient in failing to argue that the evidence was insufficient to allow the trial court to accept his "guilty plea." First, defendant pleaded no contest pursuant to *People v. West* (1970) 3 Cal.3d 595, which allows a defendant to plead no contest without admitting the factual basis for the plea. (*In re Alvernaz* (1992) 2 Cal.4th 924, 932.) Such a plea "allows a defendant to plead guilty in order to take advantage of a plea bargain while still asserting his or her innocence." (*People v. Rauen* (2011) 201 Cal.App.4th 421, 424.) Second, the evidence Bears found a baggie of methamphetamine weighing 0.9 grams in defendant's wallet was sufficient to support his plea.

13

### III
### Defendant's Claim That the Trial Court Erred in Denying His Motion to Disqualify Judge Eddie Keller Fails

Defendant claims that at some unspecified hearing after the suppression hearing he moved to disqualify Judge Keller (Code Civ. Proc., § 170.6), and the trial court erroneously denied his motion. He also asserts that the state has concealed the transcript of that hearing from him. We are not persuaded.

There is no indication in the record that defendant ever moved to disqualify Judge Keller. While defendant contends the state has concealed the transcript of the hearing on the motion, he has failed to indicate the date on which the motion was made. Moreover, having reviewed the entire record in this matter, we note that no mention of any such motion is made in any of the numerous minute orders contained therein, and the appeals clerk of the El Dorado County Superior Court has certified that the clerk's transcript "is a full, true and correct photocopy of all" papers contained in the clerk's file. Moreover, even if we assume defendant did move to disqualify Judge Keller, defendant has failed to disclose the basis of that motion, or indicate what the missing transcript might contain. Absent such information, we cannot address defendant's claim that the trial court erred in denying his motion to disqualify. Accordingly, that claim fails.

### IV
### Defendant Has Failed to Show His Trial Counsel Was Ineffective

Defendant contends he was denied effective assistance of counsel. In his opening brief, he identifies 14 instances in which he contends his trial counsel was ineffective. As we shall explain, defendant has failed to meet his burden of establishing that his trial counsel's performance was deficient and/or that he was prejudiced by any of the alleged deficiencies, whether considered individually or collectively. Accordingly, the contention fails.

The burden is on defendant to establish ineffective assistance by a preponderance of the evidence. (*People v. Ledesma*, *supra*, 43 Cal.3d at p. 218.) There are two

elements to an ineffective assistance claim. "[A] defendant seeking relief on the basis of ineffective assistance must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington, supra,* 466 U.S. at pp. 687-696; [80 L.Ed.2d at pp. 693-699].) "[W]hen considering a claim of ineffective assistance of counsel, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' [Citation.] A defendant must prove prejudice that is a ' "demonstrable reality," not simply speculation.' [Citations.] Prejudice requires 'a reasonable probability that a more favorable outcome would have resulted . . . , i.e., a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Fairbank*, *supra*, 16 Cal.4th at p. 1241.)

Having reviewed the entire record in this matter, we find defendant has utterly failed to meet his burden of establishing his counsel's performance was deficient and/or a reasonable probability that a more favorable outcome would have resulted had his trial counsel not committed any or all of the alleged errors set forth. We shall address each of the alleged deficiencies in turn.

Defendant first complains that his trial counsel was ineffective in asking him "if the Police found stuff which was collected into evidence for [the] prosecution" at the suppression hearing. We perceive no prejudice where other evidence introduced by the prosecution established that methamphetamine and drug paraphernalia were found at the residence.

Defendant next complains that his trial counsel was ineffective in failing to subpoena Starr to appear at the suppression hearing despite promising defendant he

15

would do so. While defendant asserts that Starr's testimony "would likely have conflicted with Deputy Bears'[s] concerning crucial elements of the case," he fails to identify those elements or the basis for his assertion. Defendant's speculation is insufficient to establish prejudice. (*People v. Fairbank, supra,* 16 Cal.4th at p. 1241.) Accordingly, defendant has failed to establish he was prejudiced by Starr's absence.

Defendant argues that his trial counsel was ineffective in failing "to subpoena or request permission to examine the device that the officer [was] alleged to have used to conduct the test of the presumed narcotics or . . . the drugs alleged to have been confiscated." Defendant, however, fails to assert, much less provide any basis for us to conclude, that the substances seized were not methamphetamine. Accordingly, he has failed to meet his burden of establishing he was prejudiced by counsel's alleged deficiency.

Defendant's claim that his counsel was deficient for refusing to argue that the possession of methamphetamine "within the safety of Defendant's home" was not a "public offense" fails because any such argument would have been frivolous. "Counsel is not ineffective for failing to make frivolous or futile motions." (*People v. Thompson* (2010) 49 Cal.4th 79, 122.)

Defendant makes various claims related to a restraining order obtained by his mother which purportedly prohibited Crow from coming near the residence. As previously discussed, the existence of a restraining order and/or the deputies' knowledge of the same are irrelevant to a determination of whether the search violated defendant's Fourth Amendment rights where, as here, it is undisputed that Crow was at the residence with defendant's permission.

Defendant's contention that his trial counsel was ineffective for failing to admit into evidence at the suppression hearing certain photographs which assertedly contradict the deputies' testimony in another case fails because defendant makes no attempt to show how such evidence would have assisted him in this case.

Defendant next contends his trial counsel was ineffective "for failing to raise a hearsay and a vague and ambiguous objection to particular questioning of the Deputy by the prosecutor." At the suppression hearing, the prosecutor asked Bears, "Were you able to establish if Ms. Crow occupied any particular room in the house?" Bears responded that as they were getting ready to leave, defendant asked for his wallet and Bears accompanied Crow upstairs to a bedroom. Once there, Bears asked Crow, "Did both of them sleep there, and she said, yes." The prosecutor then asked Bears, "Was that after you searched [the room] or before?" Bears responded that it was before. It is clear from the transcript that Crow's statement was not offered for the truth of the matter asserted (Evid. Code, § 1200) but to show Bears's state of mind at the time he searched the bedroom, namely the reasonableness of his belief that Crow had joint control over the bedroom. As previously discussed, such evidence was relevant to determining the permissible scope of the search incident to Crow's probationary status.

Evidence Bears forced Crow to lift up her shirt to check for drugs had no bearing on the issues before the trial court, and defendant lacked standing to raise such a claim (see *People v. Badgett, supra,* 10 Cal.4th at p. 353); thus, defendant's claim that his trial counsel was ineffective in failing to introduce such evidence fails.

With respect to trial counsel's alleged error in failing to move to exclude statements made by defendant during and after his arrest on the ground such statements were obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), the record reveals that the only statements, incriminating or otherwise, made by defendant following his arrest appear to have been spontaneous and not the result of police questioning. In particular, when the deputies located the methamphetamine pipe next to the couch, defendant stated, "[T]hat's mine. That ain't hers." Thereafter, when the deputies were about to transport defendant to jail, defendant asked for his wallet. Accordingly, trial counsel was not deficient in failing to move to exclude such statements under *Miranda.* (See *People v. Ray* (1996) 13 Cal.4th 313, 337 [statements that are

17

initiated and volunteered by the suspect are not subject to the prophylactic requirements of *Miranda*.)

Finally, defendant's contention that his trial counsel was ineffective in failing to argue that the search for the wallet was unconstitutional because "[t]here is nothing in the evidence which demonstrates that the wallet allegedly discovered was the particular piece of personal property that the Defendant was actually referring to" is specious. Defendant fails to point to any evidence that the wallet found in the pair of men's pants was *not* the wallet he requested. To the contrary, the only evidence was that it was his wallet. Indeed, it contained his identification.

Defendant's ineffective assistance of counsel claim fails.

V

The Terms of Defendant's Deferred Entry of Judgment Are Enforceable, and the Sentence Imposed Following His Repeated Violations of the Same Is Valid

As we understand it, defendant claims that because the state responded in a federal habeas corpus proceeding that "it did not concede that it had custody of" defendant in *this* case, and thus, asserted that "the United States did not have jurisdiction to entertain the habeas corpus motion," he need not comply with the trial court's orders in this case. More particularly, defendant claims that because "custody" has been interpreted to include "requiring appellant's physical presence at a particular place" (see *Barry v. Bergen County Probation Dept.* (3d Cir. 1997) 128 F.3d 152, 160), the state "cannot now validly suggest that [the] order requir[ing] the Defendant to report back to the Superior Court, the probation department, and comply with the ordered treatments and appearances was genuine." Defendant's claim is absurd.

Even assuming the state misspoke in its responsive pleading filed in the federal habeas proceeding, as defendant contends, his argument fails. Not only is the argument

18

based on documents outside the record on appeal,[6] but defendant has not even attempted to establish that representations made by the state in the federal habeas proceeding are binding on the trial court in this case or otherwise have any impact on the validity of its orders.

## DISPOSITION

The judgment is affirmed.


    BLEASE    , Acting P. J.


We concur:


    ROBIE    , J.


    HOCH    , J.

---

[6] We denied defendant's repeated requests to augment the record with various documents, including the state's motion to dismiss filed in the federal habeas proceeding.