Filed 10/30/13  P. v. Simpson CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>STEVEN LYNN SIMPSON,<br><br>        Defendant and Appellant. | A138178<br><br>(Mendocino County<br>  Super. Ct. No. CR1270386) |

Steven Lynn Simpson (appellant) appeals from a judgment entered after the trial court denied his motion to suppress evidence and he pleaded no contest to possession of methamphetamine for sale (Health & Saf. Code, § 11378[1]).  He contends the trial court erred in denying his motion to suppress.  We reject the contention and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

An information was filed on December 6, 2012, charging appellant with possession of methamphetamine for sale (§ 11378, count one) and possession of marijuana for sale (§ 11359, count two).  Appellant pleaded not guilty and thereafter moved to suppress evidence (Pen. Code, § 1538.5).

At the hearing on appellant's motion to suppress, Ukiah Police Officer Kevin Murray testified that on November 18, 2012, he received a telephone call from Sabrina Laster, who was the reported victim of a cell phone theft that had occurred the week

---

[1]     All further statutory references are to the Health and Safety Code unless otherwise stated.

1

before. Laster told Murray she had learned that a woman named Renee Aigamau "was probably" using her stolen cell phone. Laster further told Murray she had received an anonymous call that Aigamau was at the Discovery Inn, "possibly" in Room 142.

Murray went to the Discovery Inn to investigate Laster's report but found no one in Room 142. He then went to the front desk and was told it had been two days since someone had been in Room 142, but that a woman identifying herself with a California identification card as Julie Caulkins had recently checked into the room above it, Room 242. Murray went to Room 242 and knocked on the door. Appellant answered and said his name was Steven Simpson.

Murray asked appellant if Aigamau was in the room. Appellant responded she was not. Murray then asked appellant if he "could check in the room," and appellant moved to the side and allowed Murray to enter. Once in the room, Murray came into contact with a woman who was laying on the bed. The woman, who Murray recognized from prior contacts, identified herself as Priscilla Knight and said she was on probation, subject to search and seizure. Murray learned from dispatch that appellant was also on probation, "with search terms," although it was later determined that appellant was no longer on probation on the day of the incident.

Appellant also testified at the suppression hearing. He testified that on November 18, 2012, he was staying in Room 242 of the Discovery Inn when he heard "several knocks" at the door. The person at the door did not identify himself, and appellant answered the door. A uniformed officer was there and asked "if Renee was there"; appellant responded that he did not know anyone by that name. While "kind of peering in the door," the officer then asked if he could look for "Renee." Appellant testified, "I couldn't slam the door in his face, so I kind of opened it so the door wouldn't hit him. I would go down if a door hits a cop. And he came in the room." When asked at the hearing on his motion to suppress, "Did you step aside willingly to allow him to enter the room and search?" appellant responded, "I had to, yeah."

The parties stipulated that for purposes of the motion to suppress hearing, the evidence presented would be limited to facts relating to Murray's entry into the hotel

2

room.  After hearing argument, the trial court denied the motion to suppress.  The court noted it was clear that Murray went to Room 242 to conduct an investigation.  The court further stated, "He knocked on the door, the person came to the door.  He asked permission to go in to look for a particular person.  He stated the reason he wanted to go in.  And the person who opened the door stepped aside clearing the door for the officer to go in. [¶] It appears to me that . . . a normal person would think that the person in the room is giving his consent to the person to enter the room. [¶] I find the entry into the room by the officer was made with the complied (sic) consent of the defendant."

After the trial court denied appellant's motion to suppress, the parties entered into a negotiated plea under which appellant pleaded no contest to count one, and the trial court dismissed count two and sentenced appellant to the low term of 16 months in state prison.  Appellant filed a timely notice of appeal.

## DISCUSSION

### *Standard*

The Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the California Constitution protect appellant from unreasonable searches and seizures.  (U.S. Const., 4th Amend.; Cal. Const., art. 1, § 13; *People v. Camacho* (2000) 23 Cal.4th 824, 830.)  The "ultimate standard set forth in the Fourth Amendment is reasonableness."  (*Cady v. Dombrowski* (1973) 413 U.S. 433, 439.)  Thus, a defendant "may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure . . . [¶] . . . [¶] [on the ground that] [t]he search or seizure without a warrant was unreasonable . . . ."  (Pen. Code, § 1538.5, subd. (a)(1)(A).)

" 'An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. . . . [¶] The [trial] court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence

3

standard. Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review.' " (*People v. Alvarez* (1996) 14 Cal.4th 155, 182, citations omitted.)

### *Detention*

Appellant contends the trial court erred in denying his motion to suppress because "the seizure stemmed from an unlawful detention." His argument is not entirely clear, but it appears his position is that Murray unlawfully detained him when he knocked on the door to Room 242 and contacted him without having any reliable information from which to reasonably suspect that Aigamau was in the room. Appellant points out, for example, that there was nothing other than "hearsay from the 'anonymous source' " to support Murray's belief that Aigamau might be at the Discovery Inn. He also asserts that once Murray did not find anyone in Room 142 and the front desk clerk told him that a woman named Julie Caulkins—and not Aigamau—had checked into Room 242, he should have known that Aigamau was not likely to be in Room 242.

The Fourth Amendment, however, "does not require police to corroborate an anonymous tip before seeking consent to enter and search a residence. Even if acting on an anonymous, uncorroborated tip, police may knock on the door of a residence, speak with the occupant, and request permission to enter and search." (*People v. Rivera* (2007) 41 Cal.4th 304, 308.) This is because "there is nothing in our constitutional jurisprudence that makes it illegal for police officers to knock on a person's door [without having reasonable suspicion that] the person has committed a crime." (*People v. Jenkins* (2004) 119 Cal.App.4th 368, 374.)

In *People v. Jenkins*, *supra*, 119 Cal.App.4th at p. 372, the Court of Appeal considered the constitutionality of a "knock and talk" procedure in which officers knocked on the door of the defendant's motel room, asked for identification, and asked the defendant whether she was on parole. The defendant said she was not a parolee and consented to a search of the room, and the officers found methamphetamine in the room. (*Id*. at pp. 370-371.) The trial court ruled that the "knock and talk" procedure violated

4

the Fourth Amendment, equating it to an investigative detention. (*Id*. at p. 374.) The Court of Appeal reversed, concluding that the procedure did not rise to the level of an investigative detention requiring an articulable suspicion of criminal activity. (*Id*. at p. 372.) The Court of Appeal further concluded that for purposes of entry into the room, the reliability of any tip that precipitated the encounter was irrelevant if the defendant consented to the entry, and that "the proper inquiry" was therefore "whether the encounter was consensual under the totality of the circumstances." (*Id*. at p. 374.)

Similarly, here, Murray's act of knocking on the door to Room 242 and asking appellant some questions did not rise to the level of an investigative detention. Thus, Murray was not required to have reliable information from which to reasonably suspect that Aigamau was in the room, or that criminal activity was going on. The proper inquiry—which we discuss below—was whether Murray's entry into the room was justified by consent.

### Implied consent

Appellant contends there was insufficient evidence supporting the trial court's finding that he impliedly consented to Murray entering the room. We disagree.

"[T]he question whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 227.) The People bear the burden of showing by a preponderance of the evidence that the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority. (*United States v. Matlock* (1974) 415 U.S. 164, 177-178 fn. 14; *People v. James* (1977) 19 Cal.3d 99, 106 fn. 4.) Even if actual consent is lacking, however, evidence will not be suppressed if an officer reasonably believed that the defendant had agreed to a search of his person or property. (*Illinois v. Rodriguez* (1990) 497 U.S. 177, 183-189.) Unless clearly erroneous, the trial court's ruling must be upheld on appeal. (*People v. Crenshaw* (1992) 9 Cal.App.4th 1403, 1408.)

5

Here, there was substantial evidence supporting the trial court's finding that appellant gave his implied consent to the entry. As noted, Murray testified that when he asked appellant if he could come inside, appellant "moved to the side," allowing him to walk into the room. Appellant admitted he "kind of opened" the door for Murray and acknowledged he "step[ped] aside" to allow Murray to enter. Under the circumstances, the trial court reasonably found that appellant consented to the entry.

Appellant asserts he was not given sufficient "time to voice an opposition" because Murray "immediately entered" the room. However, Murray's testimony—which the trial court presumably credited—does not show that he stormed into the room; rather, it shows that he asked for permission to enter, then waited to enter until appellant stepped aside, clearing the path for him to walk in. To the extent appellant is complaining that Murray did not wait for a verbal response, we note that it is settled that "consent to enter may be expressed by actions as well as words." (*People v. Harrington* (1970) 2 Cal.3d 991, 995.)

Appellant also challenges the trial court's ruling on the ground that he did not consent to the entry, but merely acquiesced to Murray's "assertion of authority" because he felt he "had to" do so. He relies primarily on *People v. Superior Court of San Bernardino County* (*Peck*) (1974) 10 Cal.3d 645, 648, but the case does not support his position. There, a uniformed officer responded to the defendant's apartment to investigate a possible burglary after a witness said he saw someone entering the apartment through a window. (*Id*. at p. 648.) With his gun drawn, the officer knocked on the defendant's apartment door, and the defendant opened the door and said he lived there; the apartment manager confirmed it was the defendant's apartment. (*Ibid*.) The officer asked if there was a burglar inside, and the defendant assured him there was not, explaining he entered through a rear window after his wife left with the key following an argument. (*Ibid*.) Nevertheless, the officer stepped past defendant into the living room. (*Ibid*.) In finding the defendant did not impliedly consent to the entry, the trial court apparently discredited the officer's testimony that the defendant stepped back and opened the door wider after the officer asked, "Can I take a look?" (*Ibid*.) The Supreme Court

6

affirmed the trial court's ruling, and in doing so, noted, "Had the People—rather than the defendant—prevailed below, the officer's testimony [that he asked to enter and that the defendant stepped back and opened the door wider] would [have] provide[d] substantial evidence to support a finding of implied consent to enter." (*Id*. at pp. 648-649.)

Here, in contrast to *People v. Superior Court of San Bernardino County* (*Peck*), *supra*, 10 Cal.3d 645, the People *did* prevail, based on Murray's testimony that he asked for permission to enter the room and that appellant stepped aside, clearing the path for him to enter. That testimony was sufficient to support the trial court's finding of implied consent. (*Id*. at pp. 648-649.)

### *Scope of consent*

Appellant contends that even if the trial court properly found he impliedly consented to the entry, the court improperly found that the scope of his consent extended to "a search of his personal effects, containers, or any other locations beyond that where a person could be located."[2] Appellant forfeited this claim because he did not raise it below. (*People v. Williams* (1999) 20 Cal.4th 119, 130 [the failure by a defendant to present a theory to support a challenge to the admissibility of evidence forfeits consideration of that ground on appeal].)

Appellant asserts he did not waive his claim because his written motion to suppress was broad and sought to exclude "all observations of the investigating officers, statements of the defendant, all contents of the hotel room and any containers found therein, forensic and testimonial results and conclusions about all such things." As noted, however, counsel expressly agreed at the suppression hearing that "the nature of the

---

[2] Murray testified at the preliminary hearing that after learning that Knight was a parolee subject to search and seizure, and under the mistaken belief that appellant was as well, he proceeded to search the room for illegal activity and found approximately 75 brand new small ziploc style baggies in a backpack that appellant identified as being his, and a black grocery bag that contained methamphetamine pipes and 11 bags of methamphetamine. He also found approximately five bags of marijuana. After waiving his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436), appellant admitted that the methamphetamine was for sale, and that he either gave away or sold the marijuana along with the methamphetamine.

proceedings was going to be limited to the entry of the hotel room." Thus, the prosecution did not present any evidence at the hearing relating to the scope of the search or the circumstances of the seizure of the evidence that was ultimately found in the room. The issue of the scope of consent was not litigated, and the trial court made no findings relating to that issue. Having agreed to limit the issues to be decided by the trial court, appellant is bound by that agreement on appeal.

Appellant alternatively contends that trial counsel rendered ineffective assistance by agreeing to limit the issue raised at the suppression hearing to the legality of Murray's entry. This contention is also without merit. A defendant making an ineffective assistance of counsel claim must show both that counsel was incompetent and that he was prejudiced as a result of counsel's conduct. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Carter* (2003) 30 Cal.4th 1166, 1211.) As to competence, the defendant must show that counsel's performance was deficient, i.e., "counsel's representation fell below an objective standard of reasonableness." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 688.) Inferences of incompetence are insufficient; the defendant must "point[] to specific error made by trial counsel." (*United States v. Cronic* (1984) 466 U.S. 648, 649, 659 fn. 26; see also *Strickland v. Washington*, *supra*, 466 U.S. at p. 690 ["strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"].) In order to show prejudice, the defendant must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at pp. 693-694; *People v. Carter*, *supra*, 30 Cal.4th at p. 1211.)

Appellant has not shown that defense counsel was incompetent in agreeing to limit the issue presented at the suppression hearing. He appears to believe that because Murray's reason for entering the room was to look for Aigamau, and because appellant allowed Murray to enter for that purpose, the scope of the search should have been limited to seeing if Aigamau was hiding inside. However, as noted, another occupant of the room, Knight, was on probation, with search and seizure terms. (See *People v. Robles* (2000) 23 Cal.4th 789, 795 [a person may validly consent in advance to

8

warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term].) Once lawfully in the room, Murray therefore had the authority to search those portions of the room to which he reasonably believed Knight had access, or over which she and appellant shared control. (*People v. Smith* (2002) 95 Cal.App.4th 912, 916.)[3] During that lawful search, he found a black grocery bag containing 11 bags of methamphetamine sitting right underneath a sink, where "[y]ou c[ould] see directly under the sink." He advised appellant of his rights, and appellant waived his rights and said he possessed the methamphetamine for sale. Based on the lawful entry, Knight's probation status, the area in which the most incriminating evidence was found, and appellant's admission, counsel could have reasonably determined that raising the issue of the scope of consent would have been futile. (*People v. Anderson* (2001) 25 Cal.4th 543, 587 [failure to make a futile act is not ineffective assistance of counsel].)

**DISPOSITION**

The judgment is affirmed.


_____
Jenkins, J.


We concur:


_____
McGuiness, P. J.


_____
Siggins, J.

*People v. Steven Lynn Simpson*, A138178

---

[3] Appellant does not argue that Knight did not have joint authority over the room, or specifically, over the location in which the 11 bags of methamphetamine and methamphetamine pipes were found.

9